Samuel WINDHAM et al., Plaintiffs,

v.

The CITY OF NEW YORK et al., Defendants.

No. 75 CIV. 6511 (MP).

United States District Court, S. D. New York.

Jan. 9, 1976.

Davis & Seitel, New York City, for plaintiffs by Stanley Seitel, New York City.

W. Bernard Richland, Corp. Counsel, New York City, for defendants (City of New York, Human Resources Administration, Agency for Child Development, Abraham Beame, James R. Dumpson and Betti S. Whaley) by Carmela Ackman, New York City.

POLLACK, District Judge.

Plaintiffs have moved for a preliminary mandatory injunction principally against the defendant Agency for Child Development (hereafter "ACD") which has terminated its monetary support as of December 31, 1975 of the Samuel's Temple Day Care Center (hereafter "Center") located in the Borough of Manhattan, New York. The plaintiffs consist of the Center, its affiliated church, and representatives of parents of children who attend the Center.

The defendant ACD is a division of The New York City Human Resources Administration (hereafter "HRA") which is also a defendant. The other defendants named in the complaint include various social welfare agencies, officials and employees of New York City, as well as four private corporations who are not sought to be enjoined in this proceeding.

An evidentiary hearing was held in respect to the motion, and an opportunity for oral argument was provided both to counsel and to the plaintiff Samuel M. Windham, the director of the Center and due deliberation was had thereon. For the reasons which appear hereafter, the motion for a preliminary injunction is denied.

■ Although plaintiff's complaint does not clearly assert a ground for federal relief, plaintiff's theory, as presented at the hearing, appears to be that the defendant ACD violated the Due Process clause of the Constitution by terminating the payments to the Center without first providing a hearing to the Center and the parents served by it. A government agency must conduct a hearing where it proposes to deprive a person of funds or benefits to which he has a "legitimate claim of entitlement;" such a claim constitutes a property interest which enjoys the protections of due process. *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L. Ed.2d 548 (1972).

■ A preliminary injunction may be granted only where the moving party has demonstrated a combination of probable success on the merits and the possibility of irreparable injury, or, in the alternative, where there are serious questions going to the merits and the balance of hardships tips decidedly in the movant's favor. *Brown & Williamson Tobacco Corp. v. Engman*, 527 F.2d 1115 (2d Cir., 1975). As a threshold matter, therefore, it is essential for the moving parties to make a reasonable showing of entitlement to funds and benefits from ACD, and that ACD has deprived them of such benefits without a hearing. Since the plaintiff Center and the plaintiff parents do not necessarily stand in the same posture, it will be helpful to consider their claims separately.

As is shown hereafter, the plaintiff Center has failed to make a showing that it has the requisite property interest in continued funding from the defendant.

The Center, which has been in operation since 1969, has received financial support from ACD since December 1, 1970. As of a recent date, the Center had been serving 437 children of 332 parents, and it is the only child care program in its area which has provided services on a twenty-four hour day basis, seven days a week.

The Center derives the bulk of the funding of its program from ACD. Since it is located in a structural facility which has not been licensed by the Department of Health of New York City, it is not eligible for state or federal funds, and although the situation in the remote past is unclear, ACD has received no reimbursement from federal funds for its payments to the Center for at least the past 18 months.

On or about November 1, 1975, ACD was notified by HRA that its overall budget would be cut by some $29,000,000 as a consequence of New York City's well-known fiscal condition. ACD consequently determined that funding for 28 day care programs, of which the plaintiff Center was one, would not be continued after December 31, 1975. The agency

has not initiated funding of any day care centers to which it was not previously obligated since it was notified of the cut in the funds available to it. The Center was notified of ACD's decision to terminate the funding of its child care program in a mailgram dated November 21st and by a letter dated November 24, 1975. The November 24th letter advised the Center of the applicable procedures for the transfer of services to other day care facilities.

In distinction to an earlier notification to the Center dated February 24, 1975 that its program funding would shortly thereafter be terminated (which decision was apparently rescinded), the notifications sent in November did not advise the Center that it had an opportunity to controvert the reasons for the termination at a hearing. Rev. Windham requested such a hearing in a letter dated December 11th to the defendant Betti S. Whaley, the Commissioner of ACD. Although no formal evidentiary hearing was held pursuant to that request, a meeting was held at Rev. Windham's request on December 23rd in the office of HRA Administrator James R. Dumpson, at which defendants Dumpson and Whaley were present to discuss the basis for ACD's decision. At that time, Rev. Windham was advised that the Center's funding was terminated because the facility in which the program is located was unlicensed and its condition was unlicenseable. Rev. Windham disputes the latter and contends that the Center has failed to obtain a license because of fault on the part of the City's agencies. *Non constat*, the Center *is* unlicensed.

ACD normally engages the services and facilities of day care centers by approving a budget of a center's expenses, and authorizing a center to procure the goods and services represented in the budget. The authorization provided by ACD is subject to periodic review. ACD's financial relationship with the plaintiff Center has been more tentative in recent years than is envisioned in the normal procedure, as a consequence of an investigation into an alleged misuse of funds by Rev. Windham conducted by HRA and the New York City Department of Investigation, of which the defendant Scoppetta is Commissioner. No criminal or other proceedings have resulted from this investigation, which began in July 1973.

The plaintiff Center has no contract with ACD which obligates the latter to provide funding on a permanent basis. Under the state statute authorizing the day care program, ACD's relationship with the Center was merely that of purchaser with a seller of day care services. N.Y.Soc.Serv.Law § 410(3)(a) (McKinney Supp.1975). Hence, the plaintiff Center has no statutory or contractual entitlement to continued funding.

■■ While the Center's interest in continued funding may have been of considerable importance to it, it does not constitute a property interest which is protected by the Fourteenth Amendment. *Board of Regents v. Roth, supra.* It is clear that the Due Process clause does not require a government agency to conduct a hearing whenever it fails to renew a contract with a private business, even where that contract constitutes the sole business of the firm. *See Myers & Myers, Inc. v. United States Postal Service,* 527 F.2d 1252 (2d Cir., 1975).

Furthermore, there is no evidence of arbitrariness or bad faith on the part of any defendant, nor of the failure of ACD to follow its own rules, regulations and procedures. Thus, to the extent that the Center may have cause to challenge the substance of ACD's decision, such as its contention that it is a licenseable facility, its proper avenue for redress would seem to be judicial review of agency action (or inaction) in the New York state courts.

ACD has not decided to terminate funding because of the existence of the investigation of Rev. Windham's administration, and there is no evidence that

ACD's decision has damaged his standing and associations in the community, or foreclosed his ability to acquire other funding or employment. *Board of Regents v. Roth, supra,* 408 U.S. at 573, 92 S.Ct. 2701; *Myers & Myers, Inc., supra.* He has not made such allegations, and no evidence was offered to establish stigma or damage to his reputation. Indeed, it appears unlikely that such a showing could be made.

■ The claim of the plaintiffs who sue as parents of children enrolled at the Center must also fail, though for a different reason. Such plaintiffs do appear to have a statutory entitlement to day care services, and thus are entitled to the protection of the Due Process clause before the defendants may act to deprive them of it. However, they as yet have no grounds for complaint, for ACD has disputed neither their entitlement nor their continued eligibility for day care services.

After what the defendant ACD characterizes as a futile attempt to enlist the cooperation of Rev. Windham in an orderly transfer of services to the eligible children enrolled in his program, ACD sent letters dated December 12, 1975 directly to those parents of children enrolled at the Center of whom ACD had a record. The letter advised parents to contact ACD by December 17th to arrange "referral to other child care services in the community," and it mentioned ACD's recognition that "continuity of day care services is vital to all parents enrolled in the program." These letters were received in some instances on December 17th too late to comply with the advisory; however, the opportunity to arrange for referrals has not lapsed or been withdrawn. By early January, some 20 parents had sought ACD's assistance in arranging substitute facilities; two such requests had been completely processed, and the others are subject to processing.

■■ The plaintiffs have no statutory or other right to receive services from a specific day care center. Since ACD asserts that substitute services will be made available to them, plaintiffs have not yet been deprived of any benefits to which they may be entitled.

■ Some reduction in services available to the plaintiffs may be inevitable, however, if only because the plaintiff Center was the only facility in the area which offered night-time services. Nonetheless, the statutory entitlement of the parents and their children appears to be a flexible one; not surprisingly, the statute authorizing the program limits the services to be provided to those for which "funds have been made available." N.Y.Soc.Serv.Law § 410(1) (McKinney 1966). Thus, a reduction in services, where compelled by absence of funds available to ACD for the day care program at a particular facility, would apparently not ground a constitutional right to a hearing.

■ Moreover, as long as the plaintiffs' eligibility for whatever services are available is not disputed by ACD, little purpose would be served by requiring an individual adjudicatory hearing. Such hearings are appropriate only where issues of fact exist which can and should be resolved only after the individual affected has been afforded the opportunity to present his perception of the facts and to refute that of the agency. A reduction in services which is made inevitable by a reduction in funds appropriated to the agency does not present an issue of fact concerning an individual's eligibility status, but rather an issue of policy and discretion as to where cuts may best be made. Hence, while such discretionary decisions by the agency are doubtless constrained by the Equal Protection clause, due process does not require that individual hearings be held before they are made. *See Burr v. New Rochelle Municipal Housing Authority,* 479 F.2d 1165, 1169 (2d Cir. 1973). *See also WBEN, Inc. v. United States,* 396 F.2d 601, 618 (2d Cir.), *cert. denied,* 393 U.S. 914, 89 S.Ct. 238, 21 L. Ed.2d 200 (1968); 1970 Supp. K. Davis,

*Administrative Law Treatise* § 7.01 at 301.

None of the plaintiffs has established either probable success on the merits, threat of irreparable injury or serious questions going to the merits, and the balance of hardship does not tip decidedly in plaintiffs' favor. The motion for a preliminary injunction must be and is denied.

The foregoing shall constitute the findings of fact and conclusions of law made in accordance with Fed.R.Civ.P. 52(a).

So ordered.