541 F.2d 916
 Pamela SCHNEIDER et al., Plaintiffs-Appellees-Cross-Appellants,
v.
Betti S. WHALEY, Individually and as Commissioner of the
Agency for Child Development of the City of New
York, et al.,
Defendants-Appellants-Cross-Appellees.
 No. 1372, Docket 76-7306.
 United States Court of Appeals,
Second Circuit.
 Argued July 20, 1976.
Decided Aug. 20, 1976.
 
 1
 Lewis R. Friedman, New York City (Pollack & Kaminsky, Richard M. Asche and Martin I. Kaminsky, Litman, Friedman & Kaufman, Jack T. Litman, New York City, of counsel), for plaintiffs-appellees-cross-appellants.
 
 
 2
 Rosemary Carroll, New York City (W. Bernard Richland, Corp. Counsel, Leonard Koerner and Joseph F. Bruno, New York City, of counsel), for municipal-defendants-appellants.
 
 
 3
 Mark C. Rutzick, New York City (Louis J. Lefkowitz, Atty. Gen. of State of N.Y., Irving Galt, New York City, of counsel), for defendant-appellant Philip Toia.
 
 
 4
 Before WATERMAN and MESKILL, Circuit Judges, and BARTELS, District Judge.*
 
 BARTELS, District Judge:
 
 5
 Plaintiffs, whose children attend day care centers funded under Title XX of the Social Security Act (42 U.S.C. §§ 1397 et seq.), pursuant to the New York State plan, N.Y. Social Services Law § 410-a (McKinney 1972), appeal on behalf of themselves and their minor children and all others similarly situated from an order of the United States District Court for the Southern District of New York (Cannella, J.) granting plaintiffs' application for class certification and for a preliminary injunction. The order enjoined the defendants from defunding 49 day care centers funded by New York City and also from the partial defunding of 15 other day care centers prior to holding a group hearing or a series of group hearings to be attended by parents of children attending the defunded day care programs. Defendants appeal from the granting of the injunction. Plaintiffs cross-appeal from the decision below to the extent that the hearing ordered by the district court was not required to be a "fair hearing" allegedly mandated by federal and state regulations and they seek at the same time a modification of the said order to require such "fair hearings." Jurisdiction is predicated upon 42 U.S.C. § 1983 and 28 U.S.C. § 1343(3) and (4) and 28 U.S.C. § 1331.
 
 
 6
 * Although the facts are set forth in the opinion of the district court, a brief summary of the statutory framework is necessary. Day care services in New York City are not mandated but are funded under Title XX of the Social Security Act (42 U.S.C. §§ 1397 et seq.), pursuant to which the federal government participates in up to 75% of the expenditures for day care services provided by the state to eligible parents subject to a $150 million ceiling. New York State contributes 12.5% of the cost and New York City contributes the remaining 12.5%. Day care services are administered by the Agency for Child Development of the City of New York ("ACD"), which is a division of the Human Resources Administration ("HRA") of the City of New York, and these services are rendered at day care centers which are non-profit corporations which are reimbursed for their expenses by ACD on the basis of an annual budget. Because of the $150 million ceiling federal funds do not cover 75% of all day care services and in many instances the City has been providing those services without reimbursement from either federal or state funds. It is admitted that ACD, the City and the State are in a "financial crunch" and that ACD's limited funding requires at least a redistribution of funds. In response to this fiscal crisis ACD was required to reduce its budget by $30.8 million or 16%.
 
 
 7
 After considering various alternative methods ACD determined that the best method of accomplishing this reduction was to defund 49 day care programs and 7 mini-family care programs and partially defund 15 day care centers, resulting in the closing of centers providing services for more than 3,000 children. Accordingly, on June 1, 1976, ACD sent a written notice of intended closings to each day care center scheduled for defunding. Prior to July 1, 1976, meetings were held with ACD staff and sponsoring boards of defunded programs requesting a conference, at which ACD explained the reason and the criteria for the closings. While the record to date is unclear ACD projects that by the end of August, 1976, all the affected children will have been placed in alternative centers. In addition ACD has pledged that in making the new placements it will "accord geographic considerations the highest priority."[1] It further estimates that between 75% and 85% of the children affected will be offered placement in centers within 15 to 20 blocks of their present center.[2] Although 1,000 parents made a written demand for a hearing pursuant to 18 N.Y.C.R.R. pt. 358, no such hearing has been granted.
 
 
 8
 Upon this state of facts plaintiffs moved for a preliminary injunction enjoining the defendants from defunding the centers until (1) such time as the parents receive a "fair hearing" as described in state and federal regulations; (2) all persons in the same geographic areas and category receive similar day care services; and (3) the defendants give public notice of amending their state plan.
 
 
 9
 In its opinion below, the court noted that 45 C.F.R. § 205.10(a)(6)(A) permits defunding while a hearing is conducted if a determination is made at the hearing that the "sole issue is one of State or Federal law or policy . . . and not one of incorrect grant computation." Concluding that in this case the question of defunding in response to the fiscal budget crisis was such a policy determination, the district court held that compliance with the federal regulations would "not be dispositive of plaintiffs' claim for relief" and proceeded to consider the constitutional claim raised. In referring to New York State's participation in the federal program (42 U.S.C. § 1397a) pursuant to New York State Social Services Law § 410-b and the creation of ACD by the City of New York, the court concluded, however, that the plaintiffs "acquired a specific and legitimate expectation that they will be able to send their children to a day care center" which as a matter of statutory entitlement fell within the due process requirements of Goldberg v. Kelly, 397 U.S. 254, 262, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). See also Goss v. Lopez, 419 U.S. 565, 572-74, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975); Board of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); Caramico v. Secretary of H. U. D., 509 F.2d 694 (2d Cir. 1974); Burr v. New Rochelle Municipal Housing Authority, 479 F.2d 1165 (2d Cir. 1973). Thereupon the court on July 1, 1976, certified the class action and enjoined the defunding of the day care programs prior to a group hearing or a series of group hearings upon five days' notice, affording parents an opportunity to present their views, without requiring ACD to present any evidence and at the same time ordering service upon the plaintiffs of its written decision articulating the facts underlying and the reasons for its decision. Accordingly, ACD had intensive hearings at which plaintiffs aired their grievances and protests and made suggestions, and at which ACD gave its reasons for rejecting the suggestions and explained its criteria for defunding. After the "Decision Pursuant to Group Hearings" was filed by ACD, the district court decided in a memorandum-decision dated July 21, 1976, that the group hearings complied with the court's order of July 1, 1976, and declined to further stay the defunding of the day care centers. This Court affirmed with opinion to follow.
 
 
 10
 Since the preliminary injunction has been dissolved, the defendants' appeal has become moot. What remains, however, is plaintiffs' cross-appeal. They claim the procedure employed in defunding the day care centers denies them due process and violates the Social Security Act and regulations of the United States Department of Health, Education and Welfare ("HEW") insofar as they were denied a "fair hearing" before termination or reduction of benefits.
 
 II
 
 11
 From the admitted facts, no serious question can be raised that a substantial constitutional claim has been asserted and, in addition, that the statutory claim is predicated upon the common nucleus of operative law and fact required by United Mine Workers v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). The district court properly held that the statutory claim was pendent, and further that both claims present common questions of law and fact, and that the plaintiffs could fairly and adequately represent those claims, thus authorizing certification of the class suit. The district court at the threshold considered the pendent claims, but decided that they were not "dispositive" and necessitated a consideration of the constitutional issue. We cannot agree with this conclusion, and believe a fuller consideration of the pendent statutory claim first would have rendered it unnecessary for the court to have reached the constitutional issue. Hagans v. Lavine, 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974); Rosado v. Wyman, 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970); Wyman v. Rothstein, 398 U.S. 275, 90 S.Ct. 1582, 26 L.Ed.2d 218 (1970); Almenares v. Wyman, 453 F.2d 1075 (2d Cir. 1971), cert. denied, 405 U.S. 944, 92 S.Ct. 962, 30 L.Ed.2d 815 (1972).
 
 
 12
 Considering then, as we must, the statutory claim first, we note that HEW has promulgated regulations as authorized by the Social Security Act, 42 U.S.C. § 1302, expressly requiring a state plan to provide a hearing which would meet the Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), due process standards and also the standards set forth in 45 C.F.R. § 205.10.[3] Sections 205.10(a)(4), (a)(9), and (a)(13) specifically provide, among other things, that in cases of intended action to discontinue, terminate, suspend, or reduce assistance, the state agency is required to give adequate notice, to provide for a hearing conducted by an impartial official or designee of the agency, to afford the claimant an opportunity to examine the contents of the case file and documents before the agency prior to the hearing, to permit the claimant to (i) present his case himself or with the aid of an authorized representative, (ii) bring witnesses, (iii) establish facts, (iv) advance arguments, (v) confront and cross-examine adverse witnesses, and to notify the claimant of the decision in writing. The same regulations expressly provide for a single group hearing by a consolidation of individual requests where the sole issue involves state or federal law, or policy or changes therein.
 
 Section 205.10(a)(5)(iv) reads as follows:
 
 13
 "Agencies may respond to a series of individual requests for hearing by conducting a single group hearing. Agencies may consolidate only cases in which the sole issue involved is one of State or Federal law or policy or changes in State or Federal law. In all group hearings, the policies governing hearings must be followed. Thus, each individual claimant shall be permitted to present his own case or be represented by his authorized representative;"
 
 
 14
 Sections 205.10(a)(6)(i) and (a)(6)(i)(A) read as follows:
 
 
 15
 "If the recipient requests a hearing within the timely notice period:
 
 
 16
 (i) Assistance shall not be suspended, reduced, discontinued or terminated, (but is subject to recovery by the agency if its action is sustained), until a decision is rendered after a hearing, unless:
 
 
 17
 (A) A determination is made at the hearing that the sole issue is one of State or Federal law or policy, or change in State or Federal law and not one of incorrect grant computation," (emphasis added).
 
 
 18
 From the above it is manifest that the determination of what is "State or Federal law or policy, or change in State or Federal law" is to be made in the first instance at least "at the hearing" and not in a court proceeding, and it is equally manifest that once that determination is made "at the hearing," assistance may be suspended, discontinued or terminated until a final decision "is rendered after a hearing."
 
 
 19
 The New York State Department of Social Services has adopted similar although not identical regulatory provisions for a "fair hearing" in 18 N.Y.C.R.R. pt. 358. In § 358.8 the regulation states that assistance shall be continued until a decision is rendered "except in a case in which the Department has determined in accordance with federal requirements that the issue is one of state policy. . . ."
 
 
 20
 There is no ambiguity in the wording of this regulation, which makes it crystal clear that it is the department, not the court, that makes the determination in the first instance before any cessation or interference with the continuation of the assistance. We do not agree that compliance with the regulation would not dispose of the issue. In this case the plaintiffs have properly demanded from the agency the required hearing, but the state agency has ignored the request. Had it complied, the necessity for further action by the agency might well have been eliminated by this time. Instead, the agency has furnished affidavits relying upon and emphasizing the budgetary crisis and the fiscal restraints imposed upon the agency by the Mayor of New York and the Emergency Financial Control board. The affidavits reveal an exhaustive study in cost analysis made by the agency before making its decision to defund these particular day care centers. It further maintains that it is providing alternative placements for all children affected by the defunded centers.
 
 
 21
 The agency also argues that a recipient of day care services does not have a right to receive services at a particular facility, and that a hearing is only required where a decision must be made in individual cases to determine the eligibility of a recipient for day care services. It claims that there is no issue of fact to be determined at a hearing as to the status of any individual, but that the issue is simply a matter of policy as to where necessary emergency cuts may best be made, the determination of which requires no hearing. It argues in effect that there is no reduction or termination of services involved by defunding. Unfortunately, the issue is not that simple, since conceivably defunding under certain circumstances might be equated with a reduction or discontinuance of services. It is unnecessary for this Court at this time to resolve this issue or the corollary issue as to whether a recipient of day care services has a statutory or constitutional right to receive services at a specific day care center or location. Cf. Windham v. City of New York, 405 F.Supp. 872 (S.D.N.Y.1976); Gasaway v. McMurray, 356 F.Supp. 1194 (S.D.N.Y.1973). These are questions which in the final analysis can best be determined by a hearing under the regulations. Unlike the pre-termination hearing in Goldberg, supra, however, assistance in this case may be suspended, reduced or terminated until a decision is reached if the sole issue involved is one of policy or change in State or Federal law.
 
 III
 
 22
 As noted above, the federal hearing requirements in 45 C.F.R. § 205.10(a) are modeled principally on the due process mandates of Goldberg, supra, which dealt with the termination before a "fair hearing" of welfare benefits constituting the "basic demands of subsistence." The Goldberg Court also recognized that some governmental benefits may be administratively terminated before an evidentiary hearing. See, e. g., Arnett v. Kennedy,416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974); Torres v. New York State Department of Labor, 333 F.Supp. 341 (S.D.N.Y.1971), aff'd, 405 U.S. 949, 92 S.Ct. 1185, 31 L.Ed.2d 228 (1972), petition for rehearing denied, 410 U.S. 971, 93 S.Ct. 1446, 35 L.Ed.2d 707 (1973). Under the flexible concept of due process, what procedures may be due under a given set of circumstances depends upon the extent to which the recipient of governmental benefits may be "condemned to suffer grievous loss." Joint Anti-Fascist Refugee Committee v. McGrath, 341 U.S. 123, 168, 71 S.Ct. 624, 647, 95 L.Ed. 817 (1951); Cafeteria & Restaurant Workers, Local 473 v. McElroy, 367 U.S. 886, 895, 81 S.Ct. 1743, 1748-49, 6 L.Ed.2d 1230 (1961); Hannah v. Larche, 363 U.S. 420, 440, 80 S.Ct. 1502, 1513, 1514, 4 L.Ed.2d 1307 (1960).
 
 
 23
 In Goldberg, supra, the Court reasoned that persons qualified to receive welfare benefits necessary for survival possessed a statutory entitlement to these benefits which were more like "property" than a " gratuity." Both the federal and state administrative agencies have prescribed the same pre-termination fair hearing requirements for both welfare and day care services recipients. There is an apparent difference between the urgency and necessity of welfare benefits and the needs and demands for day care services which raises serious doubts whether the beneficiaries of day care center services can be placed in the same category as the recipients of welfare benefits in the context of due process requirements for pre-termination hearings. We recognize that there are protectable interests other than the traditional or conventional property interests which require some type of a due process hearing before termination of benefits, see Caramico v. Secretary of H. U. D., supra, and Burr v. New Rochelle Municipal Housing Authority,supra, but we can find no reason to conclude that the interests of parents in the maintenance of day care centers as provided by the Federal and State statutes and regulations fall within that due process category. Bishop v. Wood, --- U.S. ----, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976). See also, Friendly, "Some Kind of Hearing," 123 U.Pa.L.Rev. 1267 (1975). Nevertheless, the regulations provide for the same pre-termination hearings in both cases. While in the formulation of the regulations a question might have been raised whether the regulation incorporating the Goldberg due process rationale for termination of day care services was rationally adopted by HEW, see Federal Communications Commission v. WJR, the Goodwill Station, 337 U.S. 265, 69 S.Ct. 1097, 93 L.Ed. 1353 (1949), the regulation as it now stands must be sustained so long as it can be said that it is "reasonably related to the purposes of the enabling legislation." Thorpe v. Housing Authority of the City of Durham, 393 U.S. 268, 280-81, 89 S.Ct. 518, 525, 21 L.Ed.2d 474 (1969); Johnson's Professional Nursing Home v. Weinberger, 490 F.2d 841 (5th Cir. 1974). No challenge is now presented to the validity of this regulation as far as it applies to a fair hearing involving day care center services and consequently there can be no question that the regulation remains in full force and must be given the same effect as the statutes themselves. Smith v. Vowell, 379 F.Supp. 139 (W.D.Texas), aff'd, 504 F.2d 759 (5th Cir. 1974).
 
 
 24
 In the last analysis, however, it seemed to us that the real objection to the application of the "fair hearing" regulation to termination of services by day care centers is not so much to the evidentiary nature of the hearing as to the requirement, as in Goldberg, of a continuation of assistance payments before any hearing. In the context of this case we need not reach this issue since the Federal regulations specifically provide that assistance may be discontinued or terminated until "a decision is rendered after a hearing" if at the hearing it is determined that the "sole issue is one of State or Federal law or policy, or change in State or Federal law." The State regulation is substantially the same, permitting cessation of payments when "the issue is one of State policy" and "neither one of fact or judgment."
 
 
 25
 While we believe that hearings conforming to the procedural requirements set out in the regulations should be mandated forthwith, it appears to us as inescapable that it will be determined at the hearing that the necessity for defunding presents an issue which is solely one of "State or Federal law or policy, or change in State or Federal law" which would justify an immediate suspension, reduction, discontinuance, or termination of assistance until a decision is rendered after the hearings. It should be noted, however, that this is a decision to be made by the hearing officer and not by the Court. It is well settled that a preliminary injunction is an extraordinary remedy and must not be granted except upon a clear showing that there is a likelihood of success and irreparable injury. Checker Motors Corp. v. Chrysler Corp., 405 F.2d 319, 323 (2d Cir.), cert. denied, 394 U.S. 999, 89 S.Ct. 1595, 22 L.Ed.2d 777 (1969); Sanders v. Air Line Pilots Ass'n Int'l, 473 F.2d 244, 248 (2d Cir. 1972). There has been no showing by the plaintiffs of any likelihood of success on the merits and "the balance of hardships tips decidedly" toward the defendants. See Checker Motors Corp. v. Chrysler Corp., supra, 405 F.2d at 323; Gulf & Western Industries, Inc. v. Great A. & P. Tea Co., Inc., 476 F.2d 687, 692-99 (2d Cir. 1973); San Filippo v. United Bro. of Carpenters & Joiners, 525 F.2d 508 (2d Cir. 1975). Under these circumstances to require payment of assistance in the interim would ignore the realities of the hearing, impose unnecessary hardships upon the defendants and threaten the continuation of other day care centers. Consequently, we do not believe the injunctive relief sought in the cross-appeal should be granted before the hearings.
 
 IV
 
 26
 In light of the foregoing, we modify our former judgment entered on July 22, 1976, and also modify the judgment of the district court and remand the case to that court with instructions to mandate an accelerated hearing[4] by the state agency in accordance with the pertinent Federal and State regulations. After the determination of whether the sole issue is one of "State or Federal law or policy, or change in State or Federal law" the hearing officer should determine whether in fact there has been a discontinuance or reduction in payment assistance[5] and if so, whether such discontinuance or reduction has been justified by the budgetary crisis and fiscal restraints imposed upon the agency. For the reasons above stated we deny interim injunctive relief prior to that hearing.
 
 
 
 *
 Of the Eastern District of New York, sitting by designation
 
 
 [1]
 Affidavit of Stephen Tamke, Assistant Interim Executive Director of ACD, p. 7 (June 25, 1976)
 
 
 [2]
 Affidavit of James Nathaniel, Director of ACD Field Operations, p. 1 (June 28, 1976)
 
 
 [3]
 45 C.F.R. § 228.14 makes applicable to the recipients of day care services the requirements of 45 C.F.R. § 205.10
 
 
 [4]
 In a letter to this Court of July 21, 1976, the plaintiffs state that hearings can be held expeditiously and "the matter finally resolved within a week to ten days" and they further "consent to immediate hearings this week and to group hearings which may be conducted simultaneously" and assert that the "review of documents will take one day at most." Letter from Lewis R. Friedman, Esq., to United States Court of Appeals for the Second Circuit, July 21, 1976
 
 
 [5]
 We emphasize that our decision in this case does not stand for the proposition that agency budgetary reallocations per se are reductions of services. See discussion supra at p. 920