Marsha **VIVERITO**, Individually and on behalf of her minor children, Adam and Jason, and on behalf of all others similarly situated, Plaintiffs,

and

Margarita Franciscovitch, Individually and on behalf of her minor child Linda, William Banister, and Joanne Agoglia, Individually and on behalf of her minor children Desiree and Christopher, and on behalf of all others similarly situated, Plaintiff-Intervenors,

v.

J. Henry **SMITH**, Individually and as Commissioner of the New York City Department of Social Services, and Philip L. Toia, Individually and as Commissioner of the New York State Department of Social Services, Defendants.

Civ. A. No. 76 Civ. 4151.

United States District Court,
S. D. New York.

Oct. 26, 1976.

Kalman Finkel, Attorney-in-Charge, The Legal Aid Society, Civ. Div., New York City, for plaintiffs; Joan Mangones, David Goldfarb and Marshall Green, The Legal Aid Society, Staten Island, N. Y., of counsel.

John E. Kirklin, Director of Litigation, Constance P. Carden, The Legal Aid Society, Civil Appeals & Law Reform Unit, New York City, for plaintiffs and plaintiff-intervenors.

W. Bernard Richland, Corp. Counsel, New York City, for defendant Smith; Steven C. DeCosta, New York City, of counsel.

Louis J. Lefkowitz, Atty. Gen., New York City, for defendant Toia; Mark C. Rutzick, Asst. Atty. Gen., New York City, of counsel.

## MEMORANDUM

LASKER, District Judge.

Plaintiffs are welfare recipients who challenge 18 N.Y.C.R.R. § 358.8(c)(1) insofar as it permits public assistance benefits to be reduced, terminated or suspended prior to a "fair hearing" decision, when the State Department of Social Services unilaterally determines that the change in aid is based solely on issues of state law or policy. They seek a preliminary injunction against application of this regulation to themselves and members of their class. The motion is granted.

### I

Marsha Viverito, a 27 year old mother of two, had been receiving as part of her Aid to Dependent Children (ADC) grant a semi-monthly shelter allowance of $150.50, which was equal to the amount she had to pay on her mortgage, for property taxes and insurance on the home, and for water rate assessment. Although she had been "recertified" and approved for this amount as recently as June, 1976 by the City Department of Social Services, on August 21st she received notice from the State Department of Social Services that in September her shelter allowance would be reduced by almost one-half, to $84.50 semi-monthly. This change was made pursuant to a new state-wide schedule of maximum allowable shelter allowances payable to any public assistance recipient, effective in September, 1975. See 18 N.Y.C.R.R. § 352.3, § 352.4. Mrs. Viverito immediately requested a "fair hearing" provided for by state regulation, and one was scheduled for September 20th. Despite the State's notice that her aid would continue pending decision if she requested a fair hearing, in early September she received a reduced payment of $84.50 from the City Department; her attorney was informed that the City was carrying out the State's determination that "in cases of shelter allowance reduction to conform

to the new state policy on maximum shelter allowance there would be no 'aid continuing' even when a fair hearing was timely requested." Paragraph 13, Affidavit of Marsha Viverito.

On September 17th, she filed a complaint in this court seeking declaratory and injunctive relief from the operation of the "policy exception" of 18 N.Y.C.R.R. § 358.8(c)(1) on behalf of herself and all other public assistance recipients in the state, as well as damages. She also sought an order to show cause and a temporary restraining order, which were granted after counsel were heard in Chambers.

On September 24, 1976, when opposing papers were due on Mrs. Viverito's motion for a preliminary injunction, the court was informed that on September 23rd, by an obviously expedited process, a decision had been made after fair hearing confirming the reduction of Mrs. Viverito's benefits. Her request for further injunctive relief was then moot. On September 28th three additional plaintiffs were permitted to intervene in the action: Mrs. Margarita Franciscovitch, a divorced mother of two who had been receiving as part of her ADC grant a shelter allowance of $214/month (which represented her monthly rental under a three year lease approved by the City and signed in July, 1975) until she received notice in August, 1976 that it would be reduced thereafter to $183/month; Mr. Alfred Banister, whose Home Relief shelter allowance of $160/month (equal to his monthly rent under a one year city-approved lease) was reduced to $152/month; and Mrs. Joanne Agoglia, a mother of two, whose shelter allowance of $195/month was reduced by one dollar. Although all plaintiffs timely requested fair hearings on the proposed reductions, in each case the reduction was put into effect prior to the hearing.

Each plaintiff raised constitutional and statutory challenges to the "policy exception" of the state regulation identical to Mrs. Viverito's. In light of the potential for repeated mootness in individual cases, and the findings that the requirements of Rule 23(a) and 23(b)(2) were met, a second order to show cause and temporary restraining order against application of the "policy exception" to reduce aid prior to a fair hearing decision were signed with respect to the named plaintiffs and members of their class. The class was conditionally defined to include "all recipients of public assistance benefits including Aid to Dependent Children and Home Relief in the City of New York who timely request fair hearings to contest the proposed discontinuance or reduction of benefits and whose benefits are terminated, suspended or reduced prior to the fair hearing decision because the defendants or their agents determined pursuant to 18 N.Y.C.R.R. § 358.-8(c)(1) that the issue involved is one of law or policy."[1]

## II

"The purpose of a preliminary injunction is to maintain the status quo pending a final determination of the merits . . . It is an extraordinary remedy and will not be granted except upon a clear showing of probable success *and* possible irreparable injury. . . . However, '*the burden [of showing probable success] is less where the balance of hardships tips decisively towards the party requesting the temporary relief*' . . . In such a case, *the moving party may obtain a preliminary injunction if he has raised questions going to the merits so serious, substantial, and difficult as to make them a fair ground for litigation and thus for more deliberate investigation.*" *Checker Motors Corp. v. Chevrolet Corp.*, 405 F.2d 319, 323 (2d Cir.), *cert. denied* 394 U.S. 999, 89 S.Ct. 1595, 22 L.Ed.2d 777 (1969), quoted with approval, *Gulf & Western Industries v. Great A. & P. Tea Co., Inc.*,

1. On October 8, after further argument the second temporary restraining order was extended for ten days, on a finding on the record that many members of the class were exposed to grievous loss and that the issues raised were of sufficient moment to merit further serious consideration by the court.

476 F.2d 687, 692–93 (2d Cir. 1973) (emphasis in original).

See also *Gresham v. Chambers*, 501 F.2d 687, 691 (2d Cir. 1974). Accordingly, the inquiry must be addressed to 1) the substantiality of plaintiffs' claim for relief and 2) the balance of equity.

## A. *The Merits of Plaintiffs' Claim*

■ The challenged regulation applies to "any proposed action to discontinue or reduce assistance payments, [or] medical assistance authorization . . . ." and provides in relevant part that:

"(c) In cases in which there is a request for a fair hearing within the advance notice period

(1) Assistance shall be continued until the fair hearing decision is rendered and through a period consistent with the established policies for issuance of payments or authorization except in a case in which the department has determined, in accordance with Federal requirements, that the issue is one of State policy (including law and department regulations) and neither one of fact or judgment, nor whether the State's policies (including law and department regulations) were correctly applied to the facts of the particular case.

\*     \*     \*     \*     \*     \*

(2) On receipt of a request for a fair hearing the department shall promptly decide whether the case is one that requires assistance to be continued, or does not require that assistance be continued because the issue is one of State policy (including law and department regulations), and the department shall promptly advise the appropriate social services official and the recipient accordingly."

In *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) the Supreme Court held that welfare recipients have a "statutory entitlement" to public assistance, and consequently that "where [welfare] recipients have challenged proposed terminations as resting on *incorrect or misleading factual premises* or on *misapplication of rules or policies to the facts of*

*particular cases,*" "*only* a pre-termination evidentiary hearing provides the recipients with procedural due process." 397 U.S. at 268, 264, 90 S.Ct. at 1020, 1018. (Emphasis added) In *Almenares v. Wyman*, 453 F.2d 1075, 1082 (2d Cir. 1971), *cert. denied*, 405 U.S. 944, 92 S.Ct. 962, 30 L.Ed.2d 815 (1973) this requirement was expressly extended to situations in which welfare grants were reduced, rather than terminated, at least where the reduction was substantial; and later cases suggest that even small reductions in grant, or increases in charges to welfare recipients may be sufficiently "substantial" to entitle the recipient to some due process protection. *Burr v. New Rochelle Housing Authority*, 479 F.2d 1165 (2d Cir. 1973) (two dollar/room/month across-the-board increase in rent for public housing tenants).

The *Goldberg* Court did not address the question of whether a pretermination hearing—or any hearing—was required if a welfare recipient challenged a termination or reduction of aid solely on grounds relating to state law or policy. However, in *Russo v. Kirby*, 453 F.2d 548 (2d Cir. 1971), the Court of Appeals answered this question in the negative. *Russo* held that there "was no occasion for a hearing" either before or after termination of welfare benefits to persons on strike where the basis of the termination was a determination that such persons were ineligible for assistance under state law, and where plaintiffs did not present factual claims that they were not strikers or were otherwise entitled to relief, but sought to challenge their terminations solely on the grounds that the state law excluding strikers from welfare benefits was unconstitutional. More recently, in *Schneider v. Whaley*, 541 F.2d 916 (2d Cir. 1976) the court affirmed the principle that "assistance [funding of day care center] . . . may be . . . reduced or terminated until a decision [after appropriate hearings] is reached if the sole issue involved is one of policy or change in State or Federal law." *Id.*, at 920. Accord, *Mattern v. Weinberger*, 519 F.2d 150 (3d Cir. 1975) (a precoupment hearing for social security recipient is necessary where questions of fact

or judgment involved, but is unnecessary where the only issue is one of law or where the only fact question is suited to proof exclusively by documentary evidence).

And in *Rasmussen v. Toia*, 420 F.Supp. 757 (S.D.N.Y.1976) the three-judge court rejected an argument that *Goldberg* required pretermination hearings for Home Relief recipients under the age of 21 who were terminated because they had not obtained a Family Court certificate that no person was legally liable and available for their support, which was required by a change in statute as a condition for eligibility. The only *fact* question relevant to that group of plaintiffs was whether or not there was a Family Court certificate. This fact was an "objective condition of eligibility . . ." which the court said "need not be determined on a case by case basis." Since none of the plaintiffs claimed that the state had incorrectly determined whether or not there was a certificate (i. e. that there *was* a factual question) *or* that the requirement of a certificate was incorrectly applied to them, a hearing would be an "empty exercise" in which plaintiffs could only argue that the law itself was unwise. Accordingly, no pretermination hearing was necessary.

Defendants argue that *Rasmussen, Schneider* and *Russo* are controlling, since "the defenses which plaintiffs sought to raise at their fair hearings . . . involved no issues of fact which could bear in any way on the decision of the fair hearing officers." State Memorandum at 11. Plaintiffs claim that they do (or did) raise factual questions and defenses. Thus, a question analogous to that involved on a summary judgment motion must be decided, namely, whether there are factual questions which, if resolved favorably to the plaintiffs, could entitle them to some form of relief.

Despite the state's assertion to the contrary, it is apparent that plaintiffs do raise factual issues which might entitle them to relief, and therefore to a fair hearing *before* termination or reduction of their benefits.

First, Mrs. Viverito claims that even if the new rates may be validly applied in her case, they were incorrectly computed because they failed to include a proper amount for water rates assessment. The hearing officer did not decide this issue, and the defendants do not dispute that it is in issue. More significant is her claim that the new maximum shelter rates should not apply to her because their application would create an "emergency" situation. Counsel for defendants conceded at the hearing on October 8th that *if* plaintiffs could prove that the reductions would result in an "unforeseen emergency" they would be entitled to continuance of payments at the higher aid level for a reasonable period of time to enable them to find housing which they can afford under the new shelter allowance. See *Baumes v. Lavine*, 38 N.Y.2d 296, 379 N.Y.S.2d 760 (1975). The state argues that as a matter of law the defense is unavailable to these plaintiffs because they had been notified almost a year earlier that reductions in their shelter allowance pursuant to the new schedule were imminent; and that therefore, any claimed "emergency" would not be "unforeseen." Yet the intermixture of factual and legal questions was demonstrated by plaintiffs' rejoinder, supported by Mrs. Viverito's affidavit, that she had legitimately relied on oral assurances by a City Department employee that the notification had been a mistake. She was in fact faced with an "unforeseen" emergency when the defendants shifted ground by reducing her shelter allowance.[2]

The other plaintiffs assert "estoppel" and "hardship" defenses which might entitle them to relief on the same theory. For example, Mrs. Franciscovitch asserts that her present rent was specifically approved by the city and that she was placed in an unexpected emergency condition by the re-

---

**2.** At her fair hearing, the examiner did not dismiss her claim for "emergency" relief on the grounds of law argued by counsel; rather, he found that there was no "emergency" because he did not believe that foreclosure on her home was imminent. Thus, the question was decided on factual grounds.

duction, particularly since she needs to remain in her present neighborhood to provide appropriate care and attention to her fifteen year old brain-damaged son with the assistance of her mother, who lives nearby. Mrs. Agoglia, who lost only one dollar a month, may have some claim for emergency relief; her previously approved shelter allowance had been equivalent to her actual rent, and she underwent cancer surgery in which her right lung was removed last spring. And Mr. Banister, the only one of the four named plaintiffs who states that he was able to pay his September rent despite the reduction, nevertheless indicates that he would be unable to continue to do so and might be forced to move away from the neighborhood in which his brothers (who provide him with assistance in his daily life necessary because he cannot read or write) live.

In these circumstances, we find that the state has erroneously applied § 358.8(c)(1) so as to deprive these plaintiffs, who seek to raise bona fide questions of fact and of the application of state law to the facts of their particular cases, from continued aid pending a fair hearing. Accordingly, these plaintiffs have established likely success on the merits of their claimed right to a hearing before reduction.

Since none of the plaintiffs here seek to challenge the validity of the new maximum shelter allowance itself, cf. *Mayor v. Toia*, 419 F.Supp. 1161 (S.D.N.Y.1976) but rather claim that the new ceilings were for one reason or another incorrectly applied to their individual case, § 358.8(c)(1) itself would seem to require a hearing prior to termination or reduction of benefits. See *Almenares v. Wyman, supra* at 1089 (App. A ¶ 1). Although the state purports to be acting under that regulation, their method of doing so is not well calculated to deny pretermination hearings only to persons raising questions of policy alone. The State has apparently decided that all challenges to the reduced shelter allowances, regardless of the individual allegations, raise issues of policy alone; and thus has sought to make no individual determination of wheth-

er a claimant raised issues of fact or of policy. Moreover, in most circumstances it would be impossible to derive sufficient information as to the nature of the challenge from the recipient's request for fair hearing, and to place such a pleading burden on the recipient would be inconsistent with *Goldberg*'s rationale for requiring a hearing. 397 U.S. at 269, 90 S.Ct. 1011. The federal regulation concerning "aid continuing," (which apparently governs the State's treatment of ADC recipients and which the state is not following) recognizes the difficulty of determining before a hearing whether a recipient raises issues of fact or of policy; it states that a denial of "aid continuing" on the grounds that the recipient raises issues of policy alone may be made only "at the hearing," presumably at a point when the state hearing examiner will have sufficient information to be able to make the distinction. 45 C.F.R. § 205.-10(a)(6)(i)(A).

Since all four of these plaintiffs were denied "aid continuing" on the basis of the state's determination that the issue raised was one of policy alone, and since it has been found that all of these plaintiffs in fact raised factual questions which may have entitled them to relief and hence to a hearing before reduction, it is reasonable to assume that many other welfare recipients whose grants the state proposes to reduce or terminate may also wrongly be denied a hearing. This in turn raises substantial questions, presenting a fair ground for litigation as to whether the "fact/policy" distinction applied by the state is "inherently unworkable" as a means to achieve the requirements of procedural due process. See *Yee-litt v. Richardson*, 353 F.Supp. 996 (N.D.Cal.), aff'd, 412 U.S. 924, 93 S.Ct. 2753, 37 L.Ed.2d 152 (1973). There, the three-judge court held "inherently unworkable" a very similar "fact/policy" regulation as applied to welfare recipients, on the ground that mistakes as to what were questions of fact and policy respectively (and concomitant mistakes in reductions of aid) were inevitable and that welfare recipients were entitled to protection from such mistakes by pre-termination or pre-reduction hearings.

## B. Balance of Equities

As the *Goldberg* court recognized, welfare recipients generally live on the brutal edge of poverty; they require state assistance to meet the "basic demands of subsistence," to keep themselves and their children fed, clothed and housed. The affidavits in this case, which allege that the various landlords involved are unwilling to accept lower rents and that plaintiffs cannot afford to make up the loss in rent allowance through other parts of their welfare grant, show that there is a substantial danger that these plaintiffs may lose their present housing if aid is cut off prior to the fair hearing decision. For those recipients whose aid is wrongly reduced—that is, who are able to persuade the hearing examiner that the shelter allowance should not be reduced or should not be reduced to the extent proposed—the possible harm is clearly irreparable. A lost home can rarely be regained in the present New York market, and homelessness cannot be adequately compensated by retroactive monetary payments. Moreover, the size of the reductions suffered by Mrs. Viverito and Mrs. Franciscovitch indicate that other welfare recipients whose shelter allowances are reduced may suffer similar irreparable harm.

Of course, the state and city may also suffer irreparable injury if they are enjoined from cutting off aid on their unilateral decision that the issue is one of policy alone, in those cases where it turns out that the initial decision is correct. They cannot realistically be expected to recoup the overpayments from the class of plaintiff recipients, who presumably are generally judgment proof. While the amount of overpayment can be minimized by affording speedier decisions following the fair hearing than is normally the practice, the state's assertion that the welfare system is no "deep pocket" and the fact that it is in fiscal difficulties of its own cannot be ignored.

Nevertheless, we have found that plaintiffs have established that they and many other welfare recipients whose shelter allowances are reduced may be incorrectly and grievously injured by the states application of the regulation's "policy exception." Such a result is not only a hardship to the recipients but may also harm the interests of the state if it needlessly injures the stability of fragile family units. Be that as it may, on balance, the cost of possible excess payments by the state appears to be less damaging to it than unjustifiable deprivation would be to recipients affected by continued enforcement of the regulation.[3] See *Goldberg v. Kelly, supra,* 397 U.S. at 266, 90 S.Ct. 1011.

We find that the individual plaintiffs have established likely success on the merits, and in any event have raised questions going to the merits so substantial as to create a fair ground for litigation; that they will suffer possible irreparable injury if a preliminary injunction is not granted, and that the balance of hardships as between the state and the plaintiffs tips towards the plaintiffs.

## C. The Class

As indicated above, plaintiffs are appropriate representatives of the class of ADC and HR recipients whose shelter allowances are being terminated and who are denied "aid continuing" pending a fair hearing decision due to § 358.8(c)(1). We find that with respect to this class, the requirements of Rule 23(a) and (b)(2) are met. Counsel for the state advises that the number of persons in the City of New York whose shelter allowances have been reduced pursuant to the new maximum rent schedules, and to whom the policy exception has been applied on their requests for fair hearings, is between 50 and 200. Although the conditional order limited the class to recipients in New York City, a state-wide desig-

3. The size of this class does not appear to be so great that the monetary injury to the state will be a crippling one. Counsel for the State advises that only 50–200 persons in New York City had their shelter allowance reduced and requested fair hearings, and that 11,000 persons may be terminated from Home Relief under *Rasmussen* of whom 10 to 50% are expected to request fair hearings.

nation is appropriate since the plaintiffs challenge a state-wide practice undertaken pursuant to a state-wide regulation. *Almenares v. Wyman, supra,* 453 F.2d at 1083, note 11a. In light of the New York City figures alone, it is clear that the class is so numerous that joinder is impractical. A single question of law common to all members of the class, and a single defense as against all members of the class are presented. The plaintiffs have experienced counsel, and will fairly and adequately protect the interests of the class, which are identical: to prevent termination or reduction of previous levels of shelter allowance or other benefits prior to a fair hearing decision where there are genuine issues of fact or judgment involved. Finally the defendants' "policy exception" as applied expressly commits them to acting on grounds generally applicable to the class as defined above.

Plaintiffs seek to represent the class of *all* public assistance recipients in the State of New York to whom the policy exception of § 358.8(c)(1) is applied by the state to deny "aid continuing" pending a fair hearing decision. Relief to this wide a class is unwarranted. The record is inadequate to permit a determination whether all "public assistance" programs other than ADC and HR are designed to assist people as needy as those on ADC or HR, or with respect to so crucial an aspect of survival as housing: that is, whether such programs fall within the *Goldberg* rubric. A greater likelihood of error resulting from prehearing termination or reduction of benefits is acceptable in assistance programs outside of "core" welfare areas:

> "There is an apparent difference between the urgency and necessity of welfare benefits and the needs and demands for day care services which raise serious doubts whether the beneficiaries of day care center services can be placed in the same category as the recipients of welfare benefits in the context of due process requirements for pre-termination hearings." *Schneider v. Whaley, supra,* at 921. Accord, *Mathews v. Eldridge,* 424

U.S. 319, 340, 96 S.Ct. 893, 905, 47 L.Ed.2d 18 (1976).

On request of the court, plaintiffs specified the particular programs recipients of which they believe should be included in the class, as follows:

> "all recipients of public assistance benefits in the State of New York under the programs of Aid to Dependent Children (ADC), Aid to the Aged, Blind and Disabled (AABD), Home Relief (HR), Veteran's Assistance (VA) Medical Assistance (Medicaid) and Food Stamps who timely request fair hearings to contest the proposed discontinuance, suspension or reduction of their benefits and whose benefits are terminated, suspended or reduced prior to their fair hearing decisions because defendants Smith or Toia, their successors, or their agents determine, pursuant to 18 N.Y.C.R.R. § 358.8(c)(1) or otherwise that the issues involved are ones of law or policy; provided, however, that the class shall not include recipients of Home Relief benefits insofar as their benefits are sought to be terminated by defendants or their agents pursuant to Section 15 of Chapter 76 of the 1976 Laws of New York, amending Social Services Law § 158, and said recipients concede that there are no factual issues to be determined at the hearing."

The proposed class will be certified, with the exception of food stamp recipients, and therefore includes all recipients of ADC, HR, VA, AABD and Medicaid in the State of New York. These categories are justifiably included because the eligibility criteria for all such programs is a showing of need at the level of indigency or extreme hardship comparable to that of the welfare recipient plaintiffs in *Goldberg.* For example, Veterans Assistance is available only to one who is "unable to provide for himself or herself . . . unable to secure support from a legally responsible relative . . . not receiving [public] assistance or care [otherwise] . . ." N.Y.Soc.Serv.L. § 169. Assistance to the Aged, Blind or Disabled is designed to meet the income needs of such persons who "are receiving

basic supplemental security income benefits or whose income and resources, though above the standard of need for supplemental security income program, is not sufficient to meet their needs." N.Y.Soc.Serv.L. § 207. See *Almenares v. Wyman, supra,* 453 F.2d at 1080, note 7, and Medicaid (unlike Medicare) is available only to the "medically indigent."

However, food stamp recipients, although their eligibility is determined on the basis of need, nevertheless are not required to be eligible for other public assistance. See N.Y.Soc.Serv.Law § 95(4). Moreover the challenged regulation has special provisions pertaining to the termination, suspension or reduction of food stamp benefits and thus the defendants would not necessarily be acting on the same grounds with respect to food stamp recipients as with respect to other public assistance recipients in determining whether a fair hearing is necessary. See F.R.Civ.Proc. 23(b)(2).

Defendants oppose the proposed class in part on the ground that inclusion of Home Relief recipients is inconsistent with the recent decision in *Rasmussen, supra.* But in *Rasmussen,* as in *Russo v. Kirby, supra,* plaintiffs did not claim that there were factual mistakes in the determination as to their status. Their challenge was, in the genuine sense, one of law or policy only; they asserted that they had a right to a pretermination hearing for the purpose of asserting a defense which, as a matter of law, could not entitle them to any relief. It was in this context that the *Rasmussen* court found that procedural due process did not require a pre-termination hearing.

On the other hand plaintiffs here assert that as to the "Rasmussen" claims of members of the proposed class in the instant case, there are factual defenses which require pretermination hearings. To enjoin without qualification application of the "fact/policy" distinction with respect to this group would be unwarranted in light of *Rasmussen.* Accordingly, the preliminary injunction insofar as it affects those "Rasmussen" recipients will be limited to claims other than those in which "the only finding of fact bearing on the individual's continued receipt of Home Relief is the question of whether or not the Family Court order has been obtained . . ." *Rasmussen v. Toia, supra* at 769.

It is appropriate to add that because of the complexity and esoteric nature of the subject matter of the case the class determination may require modification. Rule 23 recognizes such a possibility, and any party may move for modification at any time it is believed that such action is necessary in the interests of justice.

The defendants are preliminarily enjoined from applying the "policy exception" of 18 N.Y.C.R.R. § 358.8(c)(1) to deny aid continuing to any recipient in the State of New York of Aid to Dependent Children, Home Relief, Medicaid, Aid to the Aged, Blind or Disabled, or Veterans Assistance who timely requests a fair hearing decision on a proposed reduction, termination or suspension of benefits, except with respect to persons on Home Relief whom the state proposes to terminate pursuant to Section 15 of Ch. 76 of the 1976 Laws of New York, amending Social Services Law Section 158(a) and who raise no factual question which would entitle them to relief other than "whether or not the Family Court order has been obtained."

This opinion constitutes the findings of fact and conclusions of law required by Rule 52.

A decree pursuant to this decision is being filed concurrently herewith.