Kathleen HURLEY, on behalf of herself and all other persons similarly situated, Plaintiff,

v.

Philip TOIA, Individually and in his capacity as Commissioner of the New York State Department of Social Services, and William J. Eagen, Jr., Individually and in his capacity as Dutchess County Commissioner of Social Services, Defendants.

No. 77 Civ. 1877 (JMC).

United States District Court, S. D. New York.

May 3, 1977.

Mid-Hudson Legal Services, Inc., Poughkeepsie, N.Y. (Jane E. Bloom, Michael E. Kolb, Barry Kaufman, and Bryan D. Hetherington, Poughkeepsie, N.Y., of counsel), for plaintiffs.

Louis J. Lefkowitz, Atty. Gen., New York City (Mark C. Rutzick, New York City, of counsel), for defendant Toia.

## OPINION AND ORDER

CANNELLA, District Judge.

Named plaintiffs,[1] recipients of public assistance benefits under New York State's Home Relief program,[2] suing on behalf of themselves and all others similarly situated, seek a preliminary injunction staying the enforcement of a recent amendment to 18 N.Y.C.R.R. § 358.8(c)(1) insofar as it authorizes the termination, reduction or discontinuance of Home Relief benefits prior to affording the opportunity for a fair hearing to contest such termination, reduction or discontinuance. The Court finds that this action may be maintained as a class action, and hereby grants the motion for a preliminary injunction.

## FACTS

Except for a thirty-day period during November 1976, plaintiff Kathleen Hurley had been a recipient of Home Relief continuously from March 1975 until April 13, 1977, when her assistance was terminated by action of the Dutchess County Department of Social Services ("Dutchess County DSS").[3] Her termination was due to the following set of circumstances: Having been deemed employable by the Dutchess County DSS, Hurley was required to report for work relief assignments pursuant to N.Y. Social

---

1. This lawsuit was instituted by Kathleen Hurley, and on April 22, 1977 the Court granted Marcus Bradford leave to intervene as a plaintiff.

2. N.Y.Soc.Serv.Law §§ 157–66 (McKinney 1976).

3. The Court has granted a temporary restraining order with respect to each named plaintiff pursuant to which plaintiffs continue to receive their Home Relief benefits pending the outcomes of their fair hearings.

Services Law § 164 and 18 N.Y.C.R.R. § 385.3(b)(1)(v). In early March 1977 she contacted the local Social Services office to report that her mother was ill and could not care for herself or for plaintiff's two brothers, aged eleven and twelve. Plaintiff further stated she was going to tend her mother and brothers and therefore would be unable to report to her work relief assignment.[4] Hurley failed to report for the entire month of March, and was notified, by letter dated March 28, 1977, that her assistance would be discontinued for this reason. *See* N.Y.Soc.Serv.Law § 164(4) (McKinney 1976).

After receiving this notice, Hurley made a timely request for a fair hearing to contest the discontinuance of benefits, but was denied continuation of assistance pending the hearing.[5] In response to inquiries made by counsel, officials of both the Dutchess County and New York State DSS stated that "aid continuing" status had been denied by virtue of an amendment to 18 N.Y. C.R.R. § 358, effective April 11, 1977, that excepted from the usual requirement of a pre-termination fair hearing review of

a determination by a Social Services official, that [a recipient] voluntarily terminated his employment or reduced his earning capacity for the purpose of qualifying for a larger amount of Home Relief or that such person without good cause, refused to register with or report semi-monthly to the New York State Employment Service, refused to accept employment or refused to participate in Work Relief on a public work project or that such person otherwise refused to comply with employability requirements of § 131 of the Social Services Law or Part 385 of this Title.

18 N.Y.C.R.R. § 358.8(c)(1).

The named plaintiffs, purporting to represent

all recipients of Home Relief in the State of New York who are deemed employable and are not caretakers of minor or needy children, who timely request fair hearings to contest the proposed discontinuance, suspension, or reduction of their benefits for alleged violations of employability requirements and whose benefits are terminated, suspended or reduced prior to the rendering of fair hearing decisions pursuant to 18 N.Y.C.R.R. § 358.8(c)(1),

maintain that the regulation is violative of their due process rights in that it allows discontinuance of public assistance benefits prior to a hearing on the correctness of such action. *See Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970).

Jurisdiction over this action is founded upon 28 U.S.C. § 1343(3) and 42 U.S.C. § 1983. *Almenares v. Wyman*, 453 F.2d 1075, 1081–83 (2d Cir. 1971), *cert. denied*, 405 U.S. 944, 92 S.Ct. 962, 30 L.Ed.2d 815 (1972).

### CLASS ACTION CERTIFICATION

The Court finds this lawsuit properly maintainable as a class action, as the requisites of Rules 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure have been satisfied.

#### Class Definition

At the outset, defendants maintain that the proposed class is too broadly drawn.[6] Because the class includes individuals affected by five separate exceptions to the general requirement that aid continue pending the fair hearing determination,

---

**4.** Although Hurley originally reported that she had a sprained wrist, at the hearing on the instant motion she limited her reason for being absent from work relief to her mother's illness.

**5.** Marcus Bradford's situation is in all relevant respects identical to that of Ms. Hurley. He failed to report to his work relief assignment in order to care for his sister, who had just undergone spinal surgery, and for her three children. Although he requested a fair hearing, he too

has been denied "aid continuing" status pending the outcome.

**6.** Although defendants present these arguments as challenges to plaintiffs' "standing" to contest the constitutionality of certain parts of the amended regulation, the Court deems it appropriate to deal with these issues in terms of class definition and propriety of class certification.

they argue that different issues will be raised with respect to some class members than are raised by others. These allegedly distinct categories arise when a Home Relief recipient has

1) voluntarily terminated his employment or reduced his earning capacity for the purpose of qualifying for a larger amount of Home Relief;

2) without good cause refused to register with or report semi-monthly to the New York State Employment Service;

3) without good cause refused to accept employment;

4) without good cause refused to participate in work relief on a public work project; or

5) otherwise refused to comply with the employability requirements of § 131 of the New York Social Services Law or Part 385 of the regulations governing administration of the Home Relief program.

■ The claim being asserted on behalf of the proposed class is that § 358.8(c)(1) allows termination of public assistance benefits without affording the recipient a prior evidentiary hearing. Whether the recipient is entitled to such a hearing depends, in part, upon the type of factual issues involved in the decision to discontinue benefits. Where there is little likelihood that the initial determination by the agency will be erroneous, due process does not require the opportunity for a pre-termination hearing. *See Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); see notes 10–11 and accompanying text, *supra.* Thus, only plaintiffs whose administrative claims raise similar types of factual issues should be members of the same class.

■ Although recipients in categories two, three and four may have had their benefits discontinued for diverse reasons, the issues that would be the subject of an administrative fair hearing contesting such agency actions are virtually identical— whether the recipient has, in fact, failed to make himself available for employment (be it by failure to register with or report to the New York State Employment Service,

by refusing to accept employment, or, as is the case with the named plaintiffs herein, by refusing to participate in work relief) and, if so, whether the recipient had good cause for doing so. There is no reason to believe that the excuses given for failure to report for work relief will be any different from, for example, reasons offered for refusal to report to the employment service. Indeed, defendants have not presented a single characteristic of any one of these categories that would distinguish it from the other two in any meaningful way. There is no indication in the record that individuals in any of these three categories will experience treatment different from that experienced by those in the other categories. *Compare Burchette v. Dumpson,* 387 F.Supp. 812, 820 (E.D.N.Y.1974) (likelihood of variations in treatment of public assistance recipients, raising possibility that the challenged regulation may be unconstitutional as applied to certain class members but constitutional as applied to others, requires denial of class certification motion). Nor has there been a showing that different types of factual issues will be raised by class members in disparate categories. The law is clear that not every member of a proposed class need be in a situation identical to that of the others, so long as the requirements of Rule 23 are otherwise met. *See Rich v. Martin Marietta Corp.,* 522 F.2d 333, 340 (10th Cir. 1975); *Almenares v. Wyman,* 453 F.2d 1075, 1080 n. 7 (2d Cir. 1971), cert. denied, 405 U.S. 944, 92 S.Ct. 962, 30 L.Ed.2d 815 (1972); *Eisen v. Carlisle & Jacquelin,* 391 F.2d 555, 562 (2d Cir. 1968); *Wallace v. McDonald,* 369 F.Supp. 180, 188 (E.D.N.Y.1973); *Leisner v. New York Tel. Co.,* 358 F.Supp. 359, 372 (S.D.N.Y.1973) (Motley, J.).

It cannot be stated, however, that the claims raised by a recipient found to have voluntarily terminated his employment or reduced his earning capacity for the purpose of qualifying for a larger benefit will be similar to those raised in the "without good cause" categories. This is especially so in light of the presumption found in New York Social Services Law § 131(11), upheld

in *Lavine v. Milne,* 424 U.S. 577, 96 S.Ct. 1010, 47 L.Ed.2d 249 (1976).[7]

Category five, a catchall provision apparently designed to encompass a variety of violations, likewise may be triggered by diverse factual situations raising numerous issues requiring due process analysis differing significantly from that undertaken in categories two, three and four.

█ Thus, for the purpose of the instant motion for a preliminary injunction, the Court defines the plaintiff class as follows:

all recipients of Home Relief in the state of New York who are deemed employable and are not caretakers of minor or needy children, who timely request a fair hearing to contest the proposed discontinuance, suspension, or reduction of their benefits for refusal to register with or report semi-monthly to the New York State Employment Service, refusal to accept employment or refusal to participate in work relief on a public work project, and whose benefits have been or will be suspended or reduced, pursuant to 18 N.Y.C.R.R. § 358.8(c)(1), prior to the rendering of a fair hearing decision.

### The 23(a) Requirements

*Numerosity*

Plaintiffs' counsel has been advised by the chief economist of the New York State DSS, one whose duties is to forecast the economic ramifications of new regulations, that during the first year of its enforcement § 358.8(c)(1) will affect approximately 2,500 employable Home Relief recipients. Although the Court has limited the plaintiff class to less than all those affected by the amended regulation, the class members will undoubtedly number in the hundreds at the very least. Moreover, the class is such that its composition will change as some Home Relief recipients have their benefits discon-

tinued and others receive the fair hearings they now seek. Thus, joinder of all class members is impracticable.

*Commonality*

Even though plaintiffs will have varying reasons for requesting fair hearings, the basic legal question in this lawsuit, common to all class members, is whether their public assistance benefits may be reduced, terminated or suspended without the opportunity for a prior evidentiary hearing.

*Typicality*

In what amounts to a claim that the named plaintiffs are not typical of the class they attempt to represent, defendants argue that there were no factual issues involved in the decision to discontinue their benefits. They maintain that the reasons given by Hurley and Bradford for not reporting to their work relief assignments, the need to care for ailing family members, are insufficient as a matter of law.[8] This position is not supported by New York law.

Under New York Social Services Law § 131, a Home Relief recipient will not be deemed employable (and will thus be excused from satisfying the employability requirements) if rendered unable to work by the need

to provide full-time care for other members of [his or her] household who are wholly incapacitated, or who are children, and for whom required care is not otherwise reasonably available . . . .

This exception has been expanded by 18 N.Y.C.R.R. § 385.1, which provides that a recipient will be deemed employable except by reason of

(4) part-time employment to the extent permitted by . . . inability to secure adequate care for children or other incapacitated members except on a part-time basis;

---

7. This subsection provides that

[a]ny person who . . . requests an increase in his grant within seventy-five days after voluntarily terminating his employment or reducing his earning capacity shall . . . be deemed to have [done so] for the purpose of qualifying for such assistance or a larger

amount thereof, in the absence of evidence to the contrary supplied by such person.

8. If the eligibility determination turns, not on an issue of fact, but one of law, a pre-termination hearing is not required. *Russo v. Kirby,* 453 F.2d 548, 551 (2d Cir. 1971).

or

(6) the need of [the recipient] to provide full-time care for other members of such person's household who are verified to be wholly incapacitated . . ..

Thus, illness of a family member may constitute good cause for failure to report. *Cf. In re Lauria,* 18 A.D.2d 848, 236 N.Y.S.2d 168 (3d Dep't 1963) (health of a close member of the employee's family is "good cause" for terminating employment under New York's Unemployment Insurance laws).

The Court finds that the claims of the named plaintiffs are typical of those of the class.

*Adequacy of Representation*

In that there do not appear to be antagonistic interests among the class members, and plaintiffs' counsel seems able to competently conduct the proposed litigation, the Court finds that the representative parties will fairly and adequately represent the interests of the class. *See Tomkin v. Kaysen,* 69 F.R.D. 541 (S.D.N.Y.1976) (Metzner, J.); *Wallace v. McDonald,* 369 F.Supp. 180, 188 (E.D.N.Y.1973); *Mersay v. First Republic Corp.,* 43 F.R.D. 465, 469 (S.D.N.Y.1968) (Metzner, J.).

*Rule 23(b)(2)*

■ Although the Second Circuit has indicated that in welfare cases involving prohibitory injunctions class certification is often unnecessary, *Galvan v. Levine,* 490 F.2d 1255 (2d Cir. 1973), *cert. denied,* 417 U.S. 936, 94 S.Ct. 2652, 41 L.Ed.2d 240 (1974), there is no question that lawsuits raising *Goldberg* claims such as those raised by the instant action are properly maintainable under Rule 23(b)(2). *See, e. g., Johnson v.*

*Mathews,* 539 F.2d 1111, 1125–26 and n. 23 (8th Cir. 1976); *Almenares v. Wyman,* 453 F.2d 1075, 1084–85 and n. 11a (2d Cir. 1971), *cert. denied,* 405 U.S. 944, 92 S.Ct. 962, 30 L.Ed.2d 815 (1972). This is especially true where, as here, there is a "potential for repeated mootness in individual cases." *Viverito v. Smith,* 421 F.Supp. 1305, 1307 (S.D.N.Y.1976) (Lasker, J.). *See also Sosna v. Iowa,* 419 U.S. 393, 397–403, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975); *Lugo v. Dumpson,* 390 F.Supp. 379, 382 (S.D.N.Y.1975) (Metzner, J.).[9]

Accordingly, the Court concludes that this action is properly maintainable as a class action for the purpose of securing declaratory and injunctive relief.

*THE INJUNCTION*

■ The now familiar standard for the issuance of a preliminary injunction is the threat of irreparable harm plus either probable success on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the plaintiff. *Jacobson & Co., Inc. v. Armstrong Cork Co.,* 548 F.2d 438, 440–41 (2d Cir. 1977); *Triebwasser & Katz v. American Tel. & Tel. Co.,* 535 F.2d 1356 (2d Cir. 1976); *Sonesta Int'l Hotels Corp. v. Wellington Assocs.,* 483 F.2d 247 (2d Cir. 1973). Moreover, a court should show greater reluctance to issue a mandatory injunction than a prohibitory injunction. *Jacobson & Co., Inc. v. Armstrong Cork Co., supra* at 441; *Clune v. Publishers' Ass'n of New York City,* 214 F.Supp. 520 (S.D.N.Y.) (Levet, J.), *aff'd on opinion below,* 314 F.2d 343 (2d Cir. 1963). The Court finds that plaintiffs have satisfied both standards.

**9.** In fact, prior to Marcus Bradford's intervention as a plaintiff in this action, defendants did argue that the instant controversy was moot as to plaintiff Hurley. Affidavits submitted in support of this contention aver that, although the *Dutchess County* DSS had applied 18 N.Y. C.R.R. § 358.8(c)(1) in denying Hurley "aid continuing" status pending a hearing, the *State* DSS has eschewed enforcement of the new regulation in her case. The Court notes that this is not the first time the state has defended a due process challenge to 18 N.Y.C.R.R. § 358.8 by mooting the claim of the representative party, *see Viverito v. Smith,* 421 F.Supp. 1305, 1307 (S.D.N.Y.1976) (Lasker, J.); *Lugo v. Dumpson,* 390 F.Supp. 379, 381 (S.D.N.Y.1975) (Lasker, J.), and views this apparent attempt to avoid review of one or another of its provisions with dismay.

Only a cursory reading of *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), is necessary for one to realize that plaintiffs will suffer not only irreparable harm, but also "extreme" and "very serious damage" if their assistance benefits are erroneously terminated. *Clune v. Publishers' Ass'n of New York City, supra* at 531. Although the Court is well aware of the fiscal crises facing the governmental entities responsible for funding the Home Relief program, this kind of economic hardship pales before the "brutal need" of the recipient for continued public assistance benefits. *See Viverito v. Smith,* 421 F.Supp. 1305, 1311 (S.D.N.Y.1976) (Lasker, J.).

Moreover, as the following discussion indicates, it appears on the present state of the record that the factual determinations to be made under the challenged regulation are of the type that *Goldberg v. Kelly* teaches should only be made after a pre-termination fair hearing.

## THE MERITS

In *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) the Supreme Court held that a welfare recipient is entitled to an evidentiary hearing prior to the termination of public assistance benefits.[10] This result was dictated by a balancing of the competing interests at stake. Recently, the Court further delineated the factors to be considered in determining what process is due a welfare recipient prior to discontinuance of benefits. These factors are "first, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge,* 424 U.S. 319,

335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976); *accord Ingraham v. Wright,* —— U.S. ——, ——, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977).

Defendants argue that there are facts in this case which, when viewed in light of the above factors, sufficiently distinguish the instant terminations from those in *Goldberg* to eliminate the necessity for pre-termination evidentiary hearings. Because some of the plaintiffs in *Goldberg* were recipients of public assistance under New York's Home Relief program, as are the instant plaintiffs, the first and third factors delineated by the Supreme Court are implicated herein in the same manner as in *Goldberg. Compare Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) (wherein the benefits being terminated were not based upon the financial need of the recipients). With respect to the second factor, however, defendants raise a number of issues that merit discussion.

Defendants' major contention is that, under § 358.8(c)(1) as recently amended, the factual issues involved in the decision to discontinue benefits are so narrow as to all but eliminate the likelihood that the initial determination will be erroneous. Of course, if dispensing with a pre-termination hearing will not significantly affect the likelihood of the agency's rendering an erroneous decision, due process will not require one. *Mathews v. Eldridge,* 424 U.S. 319, 343–44, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); *Rasmussen v. Toia,* 420 F.Supp. 757, 769–70 (S.D.N.Y.1976) (three-judge court); *Harrell v. Harder,* 369 F.Supp. 810, 820 (D.Conn. 1974).

Some plaintiffs terminated pursuant to § 358.8(c)(1) will raise the issue of whether a work assignment was in fact missed, and even this issue may well be the subject of controversy. It appears likely, however, that the vast majority of the claims will turn on whether the recipient had good cause for doing so. This is not a narrowly focused issue, capable of resolution by resort to limited, unbiased sources of informa-

---

**10.** In *Almenares v. Wyman,* 453 F.2d 1075, 1082 (2d Cir. 1971), *cert. denied,* 405 U.S. 944, 92 S.Ct. 962, 30 L.Ed.2d 815 (1972), this re-

quirement was extended to situations in which welfare grants were reduced, rather than terminated.

tion, but an issue that can only be determined after all the facts and circumstances of each individual case have been examined.

The circumstances of the named plaintiffs are illustrative in this regard. Hurley and Bradford would have good cause for their failure to report for work relief if they were needed "to provide full-time care for other members of [their] household who are wholly incapacitated, or who are children, and for whom required care is not otherwise reasonably available notwithstanding diligent efforts by such person and the appropriate social services department to obtain others to provide such care." N.Y.Soc.Serv.Law § 131(5) (McKinney). Thus, prior to termination it must be determined whether a member of the recipient's household is incapacitated, whether required care is not otherwise available, and whether the recipient and the social services department have made diligent efforts to obtain care from other sources.[11] Myriad other situations will raise myriad other factual issues. These are exactly the situations in which pre-termination hearings are essential, because "a wide variety of information may be deemed relevant, and issues of witness credibility and veracity often are critical to the decisionmaking process." *Mathews v. Eldridge,* 424 U.S. 319, 343–44, 96 S.Ct. 893, 907, 47 L.Ed.2d 18 (1976). At this stage of the litigation there is nothing in the record to indicate that other decisions under the regulations here in issue will involve less detailed factual determinations.

The possible complexity of the factual questions raised in the instant case distinguishes it from those allowing termination prior to fair hearings. In *Rasmussen v. Toia,* 420 F.Supp. 757, 769–70 (S.D.N.Y. 1976) (three-judge court), the only fact bearing on eligibility for continued receipt of Home Relief was whether an order of

disposition in a family court support proceeding had been entered. The court concluded that this was an "objective condition of eligibility" that "need not be determined on a case by case basis." 420 F.Supp. at 770. In *Harrell v. Harder,* 369 F.Supp. 810 (D.Conn.1974), HEW regulations that dispensed with the pre-termination hearing requirement were upheld because the factual determinations involved were capable of documentary proof or proof by resort to relatively reliable sources.

In stark contrast to these two cases is the "without good cause" requirement of the Home Relief employability regulations. Whether the failure to report for or accept work is for good cause is an issue which, in many cases, will require perhaps the most delicate of determinations, a case by case balancing of individual factual patterns against a loosely defined standard, with much reliance placed in the judgment of the hearing officer. This is especially true because of the absence of clearly defined standards circumscribing the "good cause" determination. For these reasons the Court finds that the case before it is more closely aligned with *Viverito v. Smith,* 421 F.Supp. 1305 (S.D.N.Y.1976) (Lasker, J.), in which welfare recipients raised genuine issues of fact and of the application of state law thereto, than with *Rasmussen* or *Harrell.*

Thus, the Court concludes that the challenges raised by members of the plaintiff class to the discontinuance of their Home Relief benefits are likely to involve allegedly "incorrect or misleading factual premises" or "misapplication of rules or policies to the facts of particular cases," *Goldberg v. Kelly,* 397 U.S. 254, 268, 90 S.Ct. 1011, 1020, 25 L.Ed.2d 287 (1970), in areas that are not "so narrowly circumscribed that the possibility of factual error in the decision whether to terminate direct pay-

---

11. In a closely related area, New York courts have isolated similar factors in determining whether illness of a relative constituted good cause for voluntarily terminating employment for purposes of New York Labor Law § 593(1). Numerous circumstances are to be examined including, *inter alia,* the seriousness of the illness or injury, the degree of consanguinity of the relationship and the availability of alternative care for the relative. *Moloney v. Levine,* 52 A.D.2d 1005, 383 N.Y.S.2d 436 (3d Dep't 1976) (semble); *Porter v. Levine,* 51 A.D.2d 1101, 381 N.Y.S.2d 537 (3d Dep't 1976); *Rosario v. Catherwood,* 28 A.D.2d 1017, 283 N.Y.S.2d 694 (3d Dep't 1967).

ment is virtually non-existent." *Harrell v. Harder*, 369 F.Supp. 810, 822 (D.Conn.1974). This being the case, due process requires that the recipient be afforded the opportunity for a pre-termination evidentiary hearing á la *Goldberg v. Kelly, supra.*

## CONCLUSION

The Court finds that 18 N.Y.C.R.R. § 358.8(c)(1) as recently amended is violative of the procedural due process requirements enunciated by the Supreme Court in *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), in that it allows termination of Home Relief benefits prior to a fair hearing where issues of fact and judgment may be in controversy. Because the plaintiffs have satisfied their burden of showing that irreparable harm will result from a denial of relief, in addition to showing probable success on the merits, they are entitled to preliminary injunctive relief. Alternatively, plaintiffs have raised serious questions going to the merits of this controversy and have established that the balance of hardships tips decidedly in their favor.

The Court also finds this action properly maintainable as a class suit.

Defendants are hereby preliminarily enjoined, pending a trial on the merits, from applying 18 N.Y.C.R.R. § 358.8(c)(1) to deny "aid continuing" to any recipient of Home Relief who is deemed employable and is not a caretaker of minor or needy children, and who timely requests a fair hearing decision on a proposed reduction, termination or suspension of benefits for refusal to register with or report semi-monthly to the New York State Employment Service, refusal to accept employment or refusal to participate in work relief on a public work project.

The foregoing constitute the findings of fact and conclusions of law of the Court pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.

SO ORDERED.