Elizabeth MILLER, Judi Cochran, Cathleen Willhite, Tanya Warke, Elizabeth Van Dyken, Joanne Lewis, Deanna Thiebert, Althea Foreman, on behalf of themselves and all others similarly situated, Plaintiffs,

.v.

Lonnie CARLSON, in his official capacity as acting Director, California Department of Social Services; California Department of Social Services; Thomas Hayes, in his official capacity as Director, California Department of Finance; Louis W. Sullivan, M.D., in his official capacity as Director, United States Department of Health and Human Services; United States Department of Health and Human Services, Defendants.

No. C–91–0676 SAW.

United States District Court, N.D. California.

June 7, 1991.

Veronica Kot, Legal Aid Soc. of Alameda County, Hayward, Cal., Tanya Broder, Legal Aid Soc. of Alameda County, Oakland, Cal., Clare Pastore, Western Center on Law and Poverty, Los Angeles, Cal., for plaintiffs.

Harlan Van Wye, Deputy Atty. Gen., Oakland, Cal., George Christopher Stoll, Asst. U.S. Atty., San Francisco, Cal., for defendants.

## MEMORANDUM AND ORDER

WEIGEL, District Judge.

### I. BACKGROUND

Plaintiffs are California recipients of Aid to Families with Dependent Children ("AFDC") who need child care in order to participate in educational or training activities likely to provide them opportunities to secure employment and remove themselves from the welfare rolls. Defendants include the California Department of Social Services ("DSS"), the United States Department of Health and Human Services ("HHS"), and the Directors of DSS, HHS, and the California Department of Finance.

At issue is a provision of the Family Support Act of 1988 which requires all states to guarantee child care to each recipient of AFDC who is participating satisfactorily in an education or training activity approved by the state. 42 U.S.C. § 602(g)(1)(A)(i)(II).

On March 3, 1991, plaintiffs filed a complaint for declaratory and injunctive relief, contending that defendants have violated their rights under the Family Support Act of 1988, 42 U.S.C. § 602(g)(1)(A)(i)(II) (Supp.1990), by limiting the guarantee of child care exclusively to AFDC recipients enrolled in the state sponsored employment and training program known as Greater Avenues to Independence ("GAIN"). Defendants maintain that such a policy is in compliance with the Act.

On May 2, 1991, upon stipulation of the named parties and pursuant to this Court's Order, plaintiffs were certified as a class defined as "all recipients of Aid to Families with Dependent Children ("AFDC") in California who are participating in or will participate in training or educational activities outside of the state-sponsored employment and training program known as Greater Avenues to Independence ("GAIN")." [1]

Plaintiffs seek a preliminary injunction to enjoin defendants from failing to provide continued child care assistance to AFDC recipients who have been or will be terminated from GAIN, but who are continuing to participate satisfactorily in their state-approved educational or training activities.

### A. The Family Support Act of 1988

Congress enacted the Family Support Act of 1988, Pub.L. No. 100–485, 102 Stat. 2343 (1988) (codified in scattered sections of 42 U.S.C.), to "profoundly and fundamentally change the welfare system ... [by creating] opportunities for recipients of Aid to Families with Dependent Children to further their education and job training and ultimately to remove themselves from the welfare rolls and gain self sufficiency through meaningful employment." 133 Cong.Rec. H1143 (daily ed. Dec. 15, 1987) (statement of Rep. Frost).

The Act requires each state, as a condition of participation in the AFDC program, to create a "Job Opportunities and Basic Skills" ("JOBS") program in order to provide training, education, and work opportunities for AFDC recipients. 42 U.S.C. § 681 et seq. (Supp.1990). JOBS participants are entitled to support services necessary for participation, including costs of transportation and other work-related expenses. 42 U.S.C. § 602(g)(2) (Supp.1990). GAIN is California's JOBS program. Cal. Welf. & Inst.Code § 11320 et seq. (West Supp.1991).

---

1. The certified class consists of all AFDC recipients who are or will be participating in educational or training activities outside of the

GAIN program. However, preliminary relief is sought only for those members of the class who have been or will be *terminated* from GAIN.

A separate section of the Act requires the state to "guarantee" child care

> for each individual [AFDC recipient] participating in an education and training activity (*including* participation in a program that meets the requirements of [the JOBS provision]) if the State agency approves the activity and determines that the individual is satisfactorily participating in the activity.

42 U.S.C. § 602(g)(1)(A)(i)(II) (Supp.1990) (emphasis added). Plaintiffs argue (1) that on its face, this child care guarantee includes, but is not limited to, JOBS participants; (2) that the structure of the Family Support Act confirms that the child care guarantee is not limited to JOBS participants; and (3) that the legislative history of this provision demonstrates that it extends beyond JOBS.

Yet HHS has promulgated a regulation which requires states to offer child care assistance to AFDC recipients *only* if they "participate in an approved education or training activity *under JOBS.*"[2] 45 C.F.R. § 255.2(a)(2) (emphasis added). In reliance on this regulation, California has denied child care to AFDC recipients who are participating satisfactorily in education or training programs but who, due to capped GAIN funds, have not been admitted into or have been terminated from GAIN. Both HHS and DSS defend their actions as consistent with the Family Support Act.

### B. *Plaintiffs' Predicament*

Plaintiffs are recipients of AFDC who are currently participating or wish to participate in educational or training programs likely to lead to permanent employment. The named plaintiffs have chosen programs such as nursing, court reporting, and paralegal training. Their declarations indicate that lack of affordable child care is the primary obstacle to successful completion of their education and training.

Members of the class seeking preliminary injunctive relief were participating in training or education activities approved through the GAIN program until they were recently terminated from the program due to budget reductions. As a result, these plaintiffs lost their child care assistance. *See* Miller Decl.; Warke Decl.; Cochran Decl.; Van Dyken Decl.; Willhite Decl.

In support of this motion, class members describe their inability to participate in training and educational activities without child care assistance.[3] Their declarations indicate that they cannot afford to pay for child care without sacrificing basic necessities. The AFDC grant, which is their only source of income, is often insufficient even for essentials.[4] This money must be stretched to pay for housing, food, utilities, clothing, transportation, personal hygiene and miscellaneous necessities for the entire family. There is no money left to pay for child care. *See* Miller Decl., ¶¶ 7, 11–14; Van Dyken Decl., ¶ 8; Weary Decl. ¶¶ 7, 9; Warke Decl. ¶ 9; Willhite Decl. ¶¶ 9, 11; Cochran Decl. ¶¶ 8, 9; Freis Decl. ¶¶ 4, 5, 7; Patton Decl. ¶¶ 4, 5; Hruby Decl. ¶¶ 4, 5; Phipps Decl. ¶¶ 4, 5, 7.

Plaintiffs now move for a preliminary injunction to enjoin defendants from failing to provide continued child care assistance to AFDC recipients who have been or will be terminated from GAIN, but who continue to participate satisfactorily in their approved educational or training activities. Their motion is well-taken.

### II. STANDARD FOR ISSUING A PRELIMINARY INJUNCTION

To obtain a preliminary injunction in this circuit, the moving party must show either: (1) a combination of probable suc-

---

**2.** The regulation also provides that states may provide child care to AFDC recipients in non-JOBS areas (areas of the state which do not have a JOBS program). In California, there are no non-JOBS areas. California AFDC recipients who are unable to participate in GAIN are denied child care.

**3.** Class members who seek preliminary relief do not challenge their termination from GAIN, but only defendants' failure to provide continued child care assistance.

**4.** The AFDC grant for a parent and two children in California, for instance, is only $694 per month, or 74.8% of the federal poverty level. 56 Fed.Reg. 6859–6860 (1991).

cess on the merits and the possibility of irreparable injury or (2) that serious questions are raised and the balance of hardships tips in its favor. *United States v. Odessa Union Warehouse Co-Op*, 833 F.2d 172, 174 (9th Cir.1987); *Benda v. Grand Lodge of Int'l Ass'n of Machinists & Aerospace Workers*, 584 F.2d 308, 314–15 (9th Cir.1978), *cert. dismissed*, 441 U.S. 937, 99 S.Ct. 2065, 60 L.Ed.2d 667 (1979). These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases. *Odessa*, 833 F.2d at 174; *Oakland Tribune, Inc. v. Chronicle Pub. Co.*, 762 F.2d 1374, 1376 (9th Cir.1985).

Plaintiffs are entitled to a preliminary injunction under either formulation. As discussed below, plaintiffs demonstrate both a likelihood of success on the merits and the possibility of irreparable harm.

## III. LIKELIHOOD OF SUCCESS ON THE MERITS

The dominant issue in this case is whether defendants' policy of providing child care *only* to GAIN participants violates plaintiffs' rights under the Family Support Act of 1988, 42 U.S.C. § 602(g)(1)(A)(i)(II).

### A. *Statutory Construction of the Family Support Act of 1988*

#### 1. Plain Language of Child Care Provision

■ The Family Support Act requires that states guarantee child care:

> for *each individual* [AFDC recipient] participating in an education and training activity (*including* participation in a program that meets the requirements of [the JOBS provisions]) if the State agency approves the activity and determines that the individual is satisfactorily participating in the activity.

42 U.S.C. § 602(g)(1)(A)(i)(II) (emphasis added).

■ In construing statutory provisions, courts must first consider the text of the statute. *See Reiter v. Sonotone Corp.*, 442 U.S. 330, 337, 99 S.Ct. 2326, 2330, 60

L.Ed.2d 931 (1979). It is well-settled that the plain language of a statute provides the best evidence of legislative intent. *See INS v. Cardoza–Fonseca*, 480 U.S. 421, 431–432, 107 S.Ct. 1207, 1212–1213, 94 L.Ed.2d 434 (1987); *Chevron U.S.A. Inc., v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–3, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984). Indeed, courts are bound to interpret a statute according to its plain language absent a clearly expressed legislative intent to the contrary. *See Consumer Product Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980); *In re Co Petro Marketing Group, Inc.*, 680 F.2d 566, 570 (9th Cir.1982).

As plaintiffs argue, the plain language of the Family Support Act provides that JOBS participants comprise one group of AFDC recipients entitled to child care. The use of the word "including" indicates Congress's intent to extend the child care guarantee *beyond* the JOBS program to *all* eligible AFDC recipients. Any other interpretation renders the word "including" meaningless. In construing a statute, courts are "obliged to give effect, if possible, to every word Congress used." *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339, 99 S.Ct. 2326, 2331, 60 L.Ed.2d 931 (1979). A court "should avoid an interpretation of a statute that renders any part of it superfluous and does not give effect to all of the words used by Congress." *Beisler v. Commissioner*, 814 F.2d 1304, 1307 (9th Cir.1987) (en banc).

■ The importance of the word "including" in the child care guarantee is underscored by comparing the child care provisions with those governing other support services. Congress explicitly limited transportation and other work-related expenses to participants in the JOBS program. *See* 42 U.S.C. § 602(g)(2) (Supp.1990) (transportation and other work-related expenses shall be provided in "the case of any individual participating in [JOBS]"). Congress could similarly have limited the child care provisions to JOBS participants, but it did not. Where Congress employs particular language in one section of a statute while

omitting it in another section of the same Act, it is presumed that Congress acted intentionally and purposefully in the disparate inclusion or exclusion. *Russello v. U.S.,* 464 U.S. 16, 23, 104 S.Ct. 296, 300, 78 L.Ed.2d 17 (1983); *see also Demarest v. Manspeaker,* — U.S. ——, 111 S.Ct. 599, 112 L.Ed.2d 608 (1991). Therefore, the Court construes Congress's decision to define eligibility for child care more broadly than eligibility for other (JOBS-limited) services as intentional.

The child care provisions of the statute are not only broadly delineated, but also mandatory. The Family Support Act dictates that a state "must guarantee" child care for each eligible individual. 42 U.S.C. § 602(g)(1)(A)(i). Child care for *all* eligible individuals is therefore a requirement, not an option. Congress established only two criteria that an AFDC recipient must meet in order to qualify for child care: satisfactory participation in an educational or training activity, and approval of this activity by the state. Plaintiffs argue that the members of the class who seek preliminary relief, by definition, have met these criteria: they are participating satisfactorily in training or educational activities which the state already has approved.[5]

California has no authority to deny child care to plaintiffs to whom a federal statute guarantees such assistance. *See Miller v. Youakim,* 440 U.S. 125, 135, 99 S.Ct. 957, 964, 59 L.Ed.2d 194 (1979) (state was without authority to deny Foster Care benefits to children living with relatives where Congress mandated these benefits for "any" child eligible under federal requirements); *Townsend v. Swank,* 404 U.S. 282, 286, 92 S.Ct. 502, 505, 30 L.Ed.2d 448 (1971) (where Congress requires that aid be furnished "to all eligible individuals," states and federal agencies are without authority to approve more narrow criteria). Therefore, plaintiffs present a strong case that the categorical exclusion of AFDC recipients in education or training activities from child care eligibility solely because they are not GAIN participants is without congressional

authorization and thereby invalid. *See also* 45 C.F.R. § 233.10(a)(1)(ii) ("A State may ... [p]rovide more limited public assistance coverage than that provided by the Act *only* where the Social Security Act or its legislative history authorizes more limited coverage.") (emphasis added).

### 2. Structure of the Family Support Act

The plain meaning derived from the language of the Family Support Act is further supported by an examination of the structure of the Act. *See K Mart Corp. v. Cartier, Inc.,* 486 U.S. 281, 291, 108 S.Ct. 1811, 1817, 100 L.Ed.2d 313 (1988) ("In ascertaining the plain meaning of the statute, the court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole.").

Title II of the Family Support Act, entitled "Job Opportunities and Basic Skills Program," contains the requirements for the JOBS program. Federal funding for JOBS is capped and each state's share determined by the state's percentage of the total national AFDC caseload. 42 U.S.C. § 603(k)(1)–(3) (Supp.1990). Funding for transportation and other work-related expenses, provided only to JOBS participants, is limited by this provision. 42 U.S.C. § 602(g)(2) (Supp.1990).

By contrast, the child care provisions are found in Title III of the Act, entitled "Supportive Services for Families" (not, significantly, "Supportive Services for JOBS Families"), and funding for child care is uncapped. 42 U.S.C. § 602(g)(3) (Supp. 1990). States receive open-ended federal matching funds for child care provided to those who need it to accept employment or to remain employed, to JOBS participants, *and* to "each individual participating in an education and training activity ... if the State agency approves the activity...." 42 U.S.C. § 602(g)(1)(A). Funding for child care, unlike JOBS funding, is therefore limited only by the number of eligible individuals.

---

**5.** Because the class members seeking preliminary relief are former GAIN participants, their activities were approved by the state before they were terminated from the program.

Thus, plaintiffs make a well-founded argument that the structure of the Family Support Act manifests Congress's intent to establish child care as a guarantee separate from the JOBS program and available to *each* individual satisfactorily participating in an education or training activity approved by the state.

### 3. Congress's Rejection of Narrower Version of Child Care Guarantee Adopted by Defendants

Where, as here, the language of the statute is plain, "we look to the legislative history to determine only whether there is a clearly expressed legislative intention contrary to that language, which would require us to question the strong presumption that Congress expresses its intent through the language it chooses." *INS v. Cardoza–Fonseca,* 480 U.S. 421, 432, 107 S.Ct. 1207, 1213, 94 L.Ed.2d 434 n. 12 (1987) (citations omitted). In this instance, the legislative history supports the statute's plain language and demonstrates Congress's intent to establish a child care guarantee for all AFDC recipients who are satisfactorily participating in an approved education or training activity.

Congress considered and rejected a Senate proposal which would have guaranteed child care only to JOBS participants. The Senate version provided:

> Each State agency shall guarantee child care ... for each family with dependent children requiring such care, to the extent that such care is determined by the State agency to be necessary for an individual's participation in employment, ed-

ucation, and training activities *under the program under Section 417 [JOBS].*

134 Cong.Rec. S7638 (daily ed. June 13, 1988) (emphasis added).

In contrast, the proposed House version did not limit the child care guarantee to JOBS participants, but instead guaranteed care if it was needed for and

> directly related to an individual's participation in work, education, or training (including participation as a mandatory participant or volunteer in the program under section 416 [JOBS] and including participation in other work, education, or training by individuals who are not participating in such program by reason of exemptions ...).

133 Cong.Rec. H11545 (daily ed. Dec. 16, 1987).

The Conference Committee thus was required to decide whether the guarantee should be limited to JOBS participants or should apply to all participants in education or training.[6] The conference agreement provides in relevant part:

> The state agency must guarantee child care to the extent that is determined by the agency to be necessary for an individual's employment. The state agency must also guarantee child care for education and training activities (including participation in the JOBS program) if the state agency approves the activity and determines that the individual is satisfactorily participating in the activity.

H.R.Conf.Rep. No. 998, 100th Cong., 2nd Sess., 159, 160, *reprinted in* 1988 U.S.Code Cong. & Admin.News 2776, 2947–48.[7] The Conference Committee's version was enacted into law.[8]

---

**6.** For example, George Miller, Chairman of the House Select Committee on Children, Youth and Families, wrote to the Democratic members of the Conference Committee, urging them to adopt the broader version:

> The Senate bill guarantees child care for JOBS participants only, while the House proposal extends this guarantee to parents enrolled in education and job training activities, including JOBS. The distinction is important because many families who may be exempt from the JOBS program often decide to pursue similar activities on their own. Under the Senate bill, these families would not be guaranteed child care services. I would recom-

mend that Congress adopt the House provision.

> Letter from George Miller to Democratic Conferees, Aug. 1, 1988 (Exh. 1 to George Miller Decl.).

**7.** Conference Committee reports provide strong evidence of congressional intent. *See Planned Parenthood Federation Inc. v. Heckler,* 712 F.2d 650, 657 n. 36 (D.C.Cir.1983).

**8.** As Congress was considering the Conference Committee's report, Representative Miller expressed his understanding that the child care guarantee, consistent with its plain language,

Plaintiffs argue that Congress's choice is explained by the great emphasis which it placed on child care throughout its deliberations concerning the Family Support Act. Congress recognized that "fundamental to any real welfare reform is access to child day care services. The lack of day care is a major barrier preventing welfare mothers from finding and keeping a job." 134 Cong.Rec. S7952 (daily ed. June 16, 1988) (statement of Sen. Sanford).[9]

As plaintiffs argue, the fact that Congress specifically rejected the Senate version of the bill, which would have limited the child care guarantee to JOBS participants, "strongly militates against a judgment that Congress intended a result that it expressly declined to enact." *Gulf Oil Corp. v. Copp Paving Co.*, 419 U.S. 186, 200, 95 S.Ct. 392, 401, 42 L.Ed.2d 378 (1974); *see also INS*, 480 U.S. at 442–443, 107 S.Ct. at 1218–1219 ("Few principles of statutory construction are more compelling than the proposition that Congress does not intend subsilentio to enact statutory language that it has earlier discarded in favor of other language.") (quoting *Nachman Corp. v. Pension Ben. Guaranty Corp.*, 446 U.S. 359, 392–393, 100 S.Ct. 1723, 1741–1742, 64 L.Ed.2d 354 (1980)).

### B. *Validity of Federal Regulation*

■ In light of the mandate established by the child care provision of the Family Support Act, HHS regulation 45 C.F.R. § 255.2(a)(2) is likely invalid for limiting the guarantee of child care to JOBS program recipients. Section 255.2(a)(2) provides in relevant part:

The State ... Agency must guarantee child care ... to the extent that such child care is necessary to permit an AFDC eligible family member to ... [p]articipate in an approved education or training activity *under JOBS* ...

(emphasis added). Plaintiffs present a strong case that federal defendants have adopted a limitation which Congress expressly rejected. *See Vierra v. Rubin*, 915 F.2d 1372, 1376 (9th Cir.1990) (invalidating a regulation where the "legislative history reveals a clear expression of congressional intent that runs contrary to the regulation").

Federal defendants maintain that the challenged regulation is compatible with 42 U.S.C. § 602(g)(1)(A)(i)(II). HHS asserts, without authority, that the child care guarantee of the Family Support Act extends beyond the JOBS program only to the extent of including AFDC recipients who reside in non-JOBS areas. It claims to have complied with the statute by allowing states to provide child care assistance for AFDC recipients who reside in non-JOBS areas. *See* 45 C.F.R. § 255.2(a)(2).

The Court agrees with plaintiffs that this interpretation is inconsistent with the language of the Act which "guarantees" child care for "each individual" in an education or training activity. Had Congress intended to limit the child care guarantee to JOBS participants and to individuals in areas not served by JOBS, it would have done so. It did not.[10]

Thus, the construction given to the child care guarantee by HHS is inconsistent, not only with the statute's language, but also with the statutory scheme and, most importantly, Congress's intent to overcome barriers to employment for all AFDC recipients. HHS's interpretation is not entitled to deference. *See Chevron U.S.A. Inc. v. Natu-*

---

extends to all AFDC participants in education or training: "I am especially pleased that this legislation assures that *all* [AFDC] program participants, and especially those participating in the JOBS Program, will have access to child care." 134 Cong.Rec. H9109 (daily ed. September 30, 1988) (emphasis added).

**9.** *See also* statements of Congress members from 134 Cong.Rec. S7952 (daily ed. June 16, 1988) and 133 Cong.Rec. H11439 (daily ed. Dec. 15, 1987).

**10.** Thus, contrary to the guarantee provided in the Family Support Act's child care provision, under the HHS regulation the numerous AFDC recipients who reside in areas served by JOBS, but who have been terminated from the program or unable to enter the program, are denied the guarantee of child care assistance. There are no non-JOBS areas in California. Therefore, AFDC recipients all reside in JOBS areas, yet large numbers have been terminated or unable to obtain access to the state sponsored JOBS program, GAIN.

*ral Resources Defense Council, Inc.*, 467 U.S. 837, 843 n. 9, 104 S.Ct. 2778, 2781 n. 9, 81 L.Ed.2d 694 (1984); *National Labor Relations Board v. Brown*, 380 U.S. 278, 291, 85 S.Ct. 980, 988, 13 L.Ed.2d 839 (1965) (courts must not "rubber stamp" agency decisions which are inconsistent with a statute or which "frustrate the congressional policy underlying a statute").

### C. *Dispute Over What Constitutes a State Approved Activity*

Defendants maintain that the critical flaw in plaintiffs' argument is their assertion that they are participating in *state-approved* "educational and training activities."

For purposes of this motion for preliminary injunction, defendants assert that plaintiffs are not entitled to relief because the state approval of their training or educational activities was "revoked" when they were terminated from GAIN. Defendants' argument is not well-founded. Defendants admit that the educational or training activities of plaintiffs seeking preliminary relief were previously approved by the state under California's GAIN program. Defendants also admit that plaintiffs were removed from the program due to program reductions *not* because their activity was no longer approved.[11] Plaintiffs were terminated because they were not in the target population prioritized to remain in GAIN. *See* Burke Decl. (notices of termination). The State has approved plaintiffs' educational and training activities pursuant to the only criteria it has developed for that purpose in connection with GAIN.[12] Defendants do not contend that plaintiffs' activities no longer conform to these criteria.

Accordingly, the Court finds that defendants fail to provide continued child care assistance to AFDC recipients participating in state-approved educational or training activities. The Court further finds that plaintiffs have demonstrated a probability of success on the merits in their claim that by denying continued child care to AFDC recipients who have been terminated from GAIN due to program reductions, but who are continuing to participate satisfactorily in their educational or training activities approved by the state, defendants have violated Section 301 of the Family Support Act of 1988, 42 U.S.C. § 602(g)(1)(A)(i)(II).

### IV. IRREPARABLE INJURY AND BALANCE OF HARDSHIPS

Plaintiffs demonstrate that without a preliminary injunction, they will suffer extreme hardship. Lack of child care assistance will force them to choose between dropping out of school and foregoing basic necessities in order to pay for child care. If they drop out of school, plaintiffs not only abandon their hopes of financial self-sufficiency, but they will lose the benefit of the loans, the time, and other resources already invested in their training. *See* Plaintiffs' Memorandum in Support, at 17–19; *see also* Rhome Decl., ¶¶ 7, 11; Martin Decl. ¶¶ 8–12. Most importantly, plaintiffs will be relegated to dependency for an indefinite period on an AFDC grant which does not even reach the federal poverty level.

In contrast, the only harm defendants may suffer is financial if, pending a full hearing on the merits, they are required to continue providing child care to those plaintiffs who have been or will be terminated from GAIN. Where the government only

---

11. See notices of termination attached to Declaration of Tom Burke. For each of the named plaintiffs who were terminated from GAIN, the Notices read in relevant part:

> As of December 31, 1990: Payment for your GAIN Child Care Will Stop. Here's Why:
> . . . .
> ( ) Your child _____ is 13 years old, which is over the age we can pay for.
> ( ) Your child care provider is your child's parent, legal guardian, or a member of your assistance unit.

> ( ) You are not attending an approved GAIN activity.
> (x) other: Your GAIN Program Services are discontinued.

12. *See* Cal.Welf. & Inst.Code § 11322.8 (West Supp.1991); *See also* "JOBS and Supportive Service State Plan Preprints," § 4.7–Self–Initiated Education or Training (Defendants' Exhibit).

faces a financial harm, the balance of hardships strongly favors plaintiffs who will be deprived of essential benefits. *Lopez v. Heckler*, 713 F.2d 1432, 1436–37 (9th Cir. 1983); *see also U.S. v. Midway Heights County Water Dist.*, 695 F.Supp. 1072, 1077 (E.D.Cal.1988) (where "preventable human suffering figures in the balance," economic hardship to water district is insufficient to justify staying a preliminary injunction); *Hurley v. TOIA*, 432 F.Supp. 1170, 1176 (S.D.N.Y.), *aff'd.*, 573 F.2d 1291 (2d Cir.1977) (fiscal crises facing government entities pale before the "brutal need" of recipients for continued benefits).

Without contradicting the evidence of harm presented by the plaintiffs, defendants assert that plaintiffs will not suffer irreparable injury because they continue to receive their basic welfare grant. Yet courts have rejected this very argument, granting preliminary injunctions to address a wide range of financial and emotional injuries similar to those plaintiffs assert here. *See e.g. Chalk v. United States Dist. Court Cent. Dist.*, 840 F.2d 701 (9th Cir.1988); *Sockwell v. Maloney*, 431 F.Supp. 1006 (D.Conn.1976), *aff'd*, 554 F.2d 1236 (2d Cir.1977) (granting preliminary injunction to reinstate foster care benefits, despite defendants' claim that plaintiffs' essential needs were met through AFDC grants).

In addition, defendants imply that by granting plaintiffs child care assistance, the court would directly diminish GAIN funds. They assert that plaintiffs seek to deprive "more deserving" or higher priority recipients of their right to GAIN services. As plaintiffs argue, this claim is based on an erroneous construction of the Family Support Act. Plaintiffs do not seek entry or reentry into GAIN at the expense of participants who are in higher priority groups. They seek only the child care assistance to which they are entitled under the Family Support Act. Funding for this child care assistance is uncapped and separate from JOBS funding. Moreover, fiscal constraints cannot justify the state's failure to comply with its legal obligations.

Thus, the balance of equities here is similar to that present in the numerous cases in which courts have granted preliminary injunctions to protect the statutory rights of public assistance recipients. *See, e.g., Lynch v. Rank*, 604 F.Supp. 30 (N.D.Cal.), *aff'd*, 747 F.2d 528 (9th Cir.1984), *modified*, 763 F.2d 1098 (9th Cir.1985); *Hurley v. TOIA*, 432 F.Supp. 1170, 1176 (S.D.N.Y.), *aff'd*, 573 F.2d 1291 (2d Cir.1977). Preliminary relief is equally appropriate here. The potential hardship to defendants is outweighed by the harm which will be suffered by plaintiffs in the absence of interim relief. A preliminary injunction is necessary to avoid irreparable harm to plaintiffs who will otherwise be forced to choose between abandoning their education or depriving themselves and their children of basic necessities in order to pay for child care.

Accordingly, the Court finds that the California Department of Social Services' failure to guarantee child care results in probability of irreparable harm to those named plaintiffs and members of the class who have been or will be terminated from GAIN due to program reductions. The balance of hardships tips decidedly in plaintiffs' favor.

## V. SECURITY BOND

■ Although Federal Rule of Civil Procedure 65(c) generally provides that a preliminary injunction will not issue except upon the giving of security, it is not required where plaintiffs are indigent or where considerations of public policy make waiver of a bond appropriate. *California ex rel. Van De Kamp v. Tahoe Regional Planning Agency*, 766 F.2d 1319, 1325–026 (9th Cir.), *modified*, 775 F.2d 998 (9th Cir. 1985). In such circumstances, courts have waived bond on the ground that to require it would effectively deny access to judicial review for indigent people. *See e.g., Toussaint v. Rushen*, 553 F.Supp. 1365, 1383 (N.D.Cal.1983); *Orantes–Hernandez v. Smith*, 541 F.Supp. 351, 385 n. 42 (C.D.Cal. 1982); *Bartels v. Biernat*, 405 F.Supp. 1012, 1019 (E.D.Wis.1975).

■ Plaintiffs are indigent persons who rely upon AFDC for the necessities of life.

The injunction sought will further the purpose of the Family Support Act and is consistent with public policy. In these circumstances, the Court concludes that considerations of equity dictate that the requested preliminary injunction issue without bond.

The Court declares the foregoing as its findings of fact and conclusions of law under Rule 52(a) of the Federal Rules of Civil Procedure.

Accordingly,

IT IS HEREBY ORDERED that:

(1) Pending judgment in this action, the California Department of Social Services ("DSS") is enjoined from failing to provide continued child care assistance to AFDC recipients who have been or will be terminated from GAIN due to program reductions, but who continue to participate satisfactorily in their approved educational or training activities. DSS shall reinstate child care assistance forthwith to AFDC recipients whose child care assistance has been discontinued solely because of their termination from GAIN due to program reductions.

(2) This preliminary injunction is issued without bond.