**Teresa BARNETT, et al.**

v.

**COMMISSIONER, DEPARTMENT OF HUMAN SERVICES.**

Supreme Judicial Court of Maine.

Argued March 4, 1992.

Decided May 15, 1992.

Kathleen C. Caldwell (orally), Pine Tree Legal Assistance, Inc., Bangor, for plaintiffs.

Marina Thibeau (orally), Thomas D. Warren, Asst. Attys. Gen., Augusta, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD and COLLINS, JJ.

WATHEN, Chief Justice.

Three recipients of Aid to Families with Dependent Children (AFDC) benefits appeal from a Rule 80C order of the Superior Court (Kennebec County, *Alexander, J.*) granting summary judgment in favor of the Department of Human Services. The Superior Court upheld the DHS's termination both of plaintiffs' benefits under Maine's ASPIRE (Additional Support for Persons in Retraining and Education) program and of plaintiffs' funding for child-care services provided pursuant to 42 U.S.C.A. § 602(g)(1)(A)(i)(II) (West 1991). On appeal to this court, each plaintiff challenges the termination of her child-care benefits. In addition, plaintiff Barnett challenges the termination of her ASPIRE participation. We affirm the judgment of the Superior Court.

The three plaintiffs are all low-income, single-mother recipients of AFDC benefits who are eligible to participate in ASPIRE, Maine's AFDC-related education and training program administered by the DHS.[1]

1. Congress created the Job Opportunities and Basic Skills (JOBS) Training Program as part of the Family Support Act of 1988. P.L. 100–485, 102 Stat. 2343 (codified at 42 U.S.C.A. §§ 681 to

As of spring 1990, plaintiffs were all voluntarily participating in educational activities for which they received ASPIRE funding through the Bangor-area service office. Local administrators in the Bangor office projected that their ASPIRE region might exceed its budget during the 1990–91 fiscal year if services to all existing ASPIRE participants were continued. In response, the DHS in June 1990 circulated a memorandum to staff members explaining that the Bangor region would control its costs by not approving any new "training" program: that is, participants in educational programs classified as "pre-training" could not be moved into "training" programs until new funding became available. Because all three plaintiffs had been previously participating in "pre-training" programs, the DHS denied their fall 1990 applications[2] requesting ASPIRE funding for "training" programs.

All three plaintiffs requested fair hearings, after each of which the hearing officer affirmed the DHS's denial. Thereafter, pursuant to M.R.Civ.P. 80C, each plaintiff filed in the Superior Court a complaint seeking judicial review of the DHS's denial. After consolidating the actions, the Superior Court granted the DHS's motion of summary judgment declaring that plaintiffs were not entitled to relief.

## I.
### *Section 602 Child Care Benefits*

■ Section 602 of the Family Support Act requires each state to "guarantee" child care for any AFDC recipient who is "satisfactorily participating" in an education and training activity that has been "approved" by the State agency adminis-

tering the state's AFDC program. That statute reads, in pertinent part, as follows:

(g) Child care during participation in employment, education and training; extended eligibility

(1)(A)(i) Each State agency must guarantee child care . . .

(I) . . .

(II) for each individual participating in an education and training activity (including participation in a[n ASPIRE program]) if the State agency approves the activity and determines that the individual is satisfactorily participating in the activity.

42 U.S.C.A. § 602(g) (West 1991). The DHS argues that plaintiffs are not entitled to section 602 benefits because, due to lack of funding, their programs were not "approved" as required by section 602. The plaintiffs, in turn, contend that section 602 child care benefits cannot be denied them simply because they have been denied ASPIRE funding for their educational programs; that is, non-ASPIRE participants who self-fund and satisfactorily continue their own educational programs are entitled to section 602 benefits.

It is clear that non-ASPIRE participants are entitled to have their educational programs *considered* for approval for purposes of section 602. Moreover, the approval process for an AFDC recipient's educational program, as contemplated by section 602, cannot be the same approval process that would result in ASPIRE-funding for that education, i.e., the Individual Opportunity Services Contract (IOSC) process. Nonetheless, because lack of funding is an appropriate consideration for purposes of an adequate section 602 ap-

687 (West 1991)). The JOBS program is run as a cooperative state-federal operation. ASPIRE is Maine's version of that federally mandated program.

**2.** The Department controls ASPIRE spending by entering into only short-term agreements with participants. Such an agreement is called an Individual Opportunity Services Contract (IOSC). The ASPIRE/JOBS program rules describe the IOSC as

The short term contract (for no more than one year) to reach interim goals, and listing

actions and services to achieve the interim goals. The IOSC is a contract between ASPIRE/JOBS and the participant, obligating both parties to take necessary actions listed on the IOSC and provide the services authorized.

A participant is required to apply anew when different services are requested or when the old IOSC expires. In the present case, the plaintiffs were applying for ASPIRE services through the IOSC process.

proval mechanism, we cannot require that the DHS provide plaintiffs with section 602 benefits.

In *Miller v. Carlson,* 768 F.Supp. 1331, 1338 (N.D.Cal.1991), the United States District Court for the Northern District of California held inconsistent with section 602 a Health and Human Services (HHS) regulation that required states to offer section 602 child care assistance to AFDC recipients *only* if they "[p]articipate in an approved education or training activity *under JOBS."* 45 C.F.R. § 255.2(a)(2) (emphasis added). At issue in *Miller* was the fact that California, in reliance on that regulation, denied child care to AFDC recipients who were "participating satisfactorily in education or training programs but who, due to capped GAIN [California's JOBS program] funds, ha[d] not been admitted into or ha[d] been terminated from GAIN." *Miller v. Carlson,* 768 F.Supp. at 1334. Finding the HHS regulation inconsistent with Congressional intent, the court in *Miller* issued a preliminary injunction against California's termination of the plaintiffs' section 602 child care:

> [P]laintiffs make a well-founded argument that the structure of the Family Support Act manifests Congress's intent to establish child care as a guarantee separate from the JOBS program and available to *each* individual satisfactorily participating in an education or training activity approved by the State.

*Id.* at 1337.

On August 19, 1991, the Department of Health and Human Services issued an Action Transmittal that instructed states to develop guidelines for provision of the federally guaranteed child care services to non-JOBS AFDC recipients who are engaged in appropriate training activities. Specifically:

> The State must provide an administrative mechanism for a non-JOBS individual ... to seek approval of his or her educational activities and demonstrate that he or she is "satisfactorily participating," for the purpose of receiving child care.

United States Dep't. of Health and Human Servs, Job Opportunities and Basic Skills Training Program Action Transmittal, No. JOBS–ACF–AT–91–15 at 4 (August 19, 1991).

*Miller* and the ensuing HHS action transmittal make clear that the DHS cannot rely merely on its IOSC process as the sole approval process under section 602 because if that were the case, no recipients of section 602 child care would ever be non-ASPIRE participants—the very approval required for section 602 benefits would result in an IOSC contract thereby making the person an ASPIRE participant. That is exactly the result rejected by the court in *Miller* and the HHS in its action transmittal. Nonetheless, because plaintiffs do not seek injunctive relief before this court, we have no occasion to determine whether the DHS has yet complied with the action transmittal. Plaintiffs are before us asking that we grant them the section 602 benefits to which they claim entitlement. That we cannot do. Regardless of what approval mechanism the DHS utilized regarding plaintiffs' requests, the reason plaintiffs were denied section 602 benefits is due to lack of funding. The action transmittal expressly provides that in establishing an appropriate section 602 approval mechanism, "[t]he State may include fiscal constraint criteria among the criteria for approval of the education or training for [ASPIRE] or non-[ASPIRE] individuals or both." Action Transmittal at 5. Thus it seems clear that, even assuming plaintiffs are correct in that the DHS has yet to comply with the action transmittal, the DHS would in any event be able to deny plaintiffs section 602 child-care benefits simply because the DHS had no funds to provide such benefits.

## II.

### *The Termination of Plaintiff Barnett's ASPIRE Participation*

■ Plaintiff Barnett argues that her 1989–90 educational program for which she had ASPIRE funding was erroneously classified by the DHS as a "pre-training" program. She contends that because that program was actually a "training" program, the DHS's June 1990 decision not to ap-

prove any moves from "pre-training" status to "training" status never should have applied to her so as to terminate her ASPIRE funding. She is before this court arguing that the DHS's "pre-training" classification was "simply a bureaucratic error." Even if Barnett's prior education program were a "training" program, the DHS could still terminate her ASPIRE benefits by not approving her fall 1990 IOSC application. She is not entitled to benefits that the DHS could lawfully terminate due to lack of funding.

The entry is:

Judgment affirmed.

All concurring.